419 A.2d 6

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gilbert TINGLE.**

Superior Court of Pennsylvania.

Argued June 12, 1979.

Filed Jan. 11, 1980.

William C. Turnoff, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Douglas H. Riblet, Assistant Public Defender, Philadelphia, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

The Commonwealth has appealed an Order of the Court of Common Pleas of Philadelphia County granting the Defendant–Appellee's motion in arrest of judgment.

Appellee was convicted at a non–jury trial of burglary, possessing instruments of crime and criminal conspiracy.[1] Posttrial, Appellee filed motions for a new trial and in arrest of judgment, and without ruling on the motion for a new trial, the trial judge, sitting as the court en banc, granted the motion in arrest of judgment.

---

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

1. 18 Pa.C.S. §§ 3502, 907 and 903 respectively.

In his opinion filed pursuant to Pa.R.A.P. 1925(a), the trial judge set forth the basis underlying his Order arresting judgment:

". . . Every reasonable inference has been given to the Commonwealth's evidence, but this court still must require that the prosecution prove every element of the crime, either factually or circumstantially, before sustaining a guilty verdict. The Commonwealth has failed to prove all the elements of the crimes charged; it has failed to meet its burden of proof beyond a reasonable doubt; and the record is insufficient to sustain a guilty verdict."

Under the authority contained in the Act of June 15, 1951, P.L. 585 § 1, 19 P.S. § 871, a trial court may grant a defendant's motion in arrest of judgment when the evidence is insufficient to sustain the charge. The appropriate standard to be used in deciding the motion, as stated in *Commonwealth v. Meadows*, 471 Pa. 201, 205, 369 A.2d 1266, 1268 (1977), quoting from *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A.2d 884, 886 (1965) is as follows:

" 'In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record*. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.' " (Emphasis in original.)

And see *Commonwealth v. Kirkman*, 264 Pa.Super. 170, 399 A.2d 720 (1979).

As the lower court obviously granted Appellee's motion on the ground of insufficient evidence, we must determine whether the evidence at trial was sufficient to support the guilty verdicts.

At trial, the arresting officer testified that as the result of a "burglary in progress" message received on his police radio, he proceeded to a tavern at 13th and Brown Streets in the City of Philadelphia. Upon arrival, at 3:40 P.M., the officer observed a broken window in the tavern and the

front door ajar. Broken glass was on the sidewalk in front of the tavern, and the lock on the door was intact and it appeared to the officer that the door had been forced open. The officer then entered the tavern and observed the Defendant and another person "hunched" over a jukebox, apparently attempting to forcibly open it.

The officer also testified that upon closer observation, he noticed the Defendant actually bending over the coin receptacle of the jukebox, within a distance of ten inches of the jukebox.

The officer further testified that he announced his presence and with weapon drawn directed both the Defendant and his companion, later identified as one Stanley Bridgeford, to raise their hands and face the wall. As they did so, the officer testified that he observed a crowbar in the hands of Bridgeford and a 10–inch screwdriver protruding from the bottom of the coin receptacle of the jukebox over which the Defendant had been hunched.

The owner of the tavern testified that as the result of a prolonged illness, the tavern had been closed for a period of nearly five months, and was yet closed on the day of the incident. The owner also testified that she observed the broken window a week prior to the incident and had covered it with tin. She further testified that the Defendant and his companion were former patrons, but neither had permission to be on the premises on the day in question.

The Defendant testified that he and Bridgeford were acquaintances; that they had commenced drinking together at 9:00 or 10:00 o'clock that morning; that they were aware that the owner of the tavern was hospitalized and the premises were closed; and that as they were walking past the tavern together, they observed the door ajar and in an effort to determine whether unauthorized persons were inside, entered the premises.

The Defendant produced as a witness the owner of the tavern next to the premises in question, who testified that the instant tavern had been broken into about a week prior

to the incident, that following the break–in, the witness closed the door but did not secure it, and that anyone endeavoring to do so could enter the premises by simply pushing the door open.

Such was the extent of the evidence. Reading it in the light most favorable to the Commonwealth, and considering as admitted all the facts which the Commonwealth's evidence tends to prove, we must determine whether such evidence, and all reasonable inferences therefrom are sufficient in law to find beyond a reasonable doubt that the Defendant is guilty of burglary, criminal conspiracy and possessing instruments of crime. *Commonwealth v. Meadows*, supra; *Commonwealth v. Ponder*, 260 Pa.Super. 225, 393 A.2d 1235 (1978).

## 1.

### Burglary

■ Under the Crimes Code of Pennsylvania, a person is guilty of burglary if he enters a building or occupied structure with the intent to commit a crime therein, unless the premises are at the time open to the public or the person who enters is licensed or privileged to do so. 18 Pa.C.S. § 3502(a). In order to prevail at trial, the Commonwealth must prove beyond a reasonable doubt the following three elements: (1) entry of a building or occupied structure by the Defendant; (2) with the contemporaneous intent on the part of the Defendant of committing a crime therein; (3) at a time when the premises were not open to the public and the Defendant was not then licensed or privileged to enter. *Commonwealth v. Brosko*, 243 Pa.Super. 312, 315, 365 A.2d 867, 868 (1976). At trial, Appellee admitted that he and his companion entered the building without permission or privilege at a time when it was not open to the public. Our focus, then, is upon the issue of whether sufficient evidence was adduced at trial to prove beyond a reasonable doubt that Appellee at the time of entry intended to commit a crime inside the building.

■ The Commonwealth may prove its case by circumstantial evidence, and the specific intent to commit a crime necessary to establish the second element of burglary may thus be found in the Defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom. *Commonwealth v. Madison*, 263 Pa. Super. 206, 214–215, 397 A.2d 818, 823 (1979); *Commonwealth v. Nutter*, 256 Pa.Super. 111, 389 A.2d 626 (1978).

We have also held that a factfinder may conclude beyond a reasonable doubt that when one enters a building by force, he did so with the intent to commit a crime therein. *Commonwealth v. Lynch*, 227 Pa.Super. 316, 319, 323 A.2d 808, 810 (1974).[2]

We have also said that the mere presence of a Defendant at the scene is not sufficient to prove burglary, or conspiracy beyond a reasonable doubt. *Commonwealth v. Eddington*, 255 Pa.Super. 25, 386 A.2d 117 (1978); *Commonwealth v. Smith*, 264 Pa.Super. 303, 399 A.2d 788 (1979).

Applying these familiar principles to the matter at hand and accepting the Commonwealth's evidence as true, we are bound to conclude that there was sufficient evidence presented to support the verdict of guilty rendered by the trial judge upon the charge of burglary, beyond a reasonable doubt. The Defendant, aware that the tavern was closed by reason of the owner's illness, entered the premises. The front door of the building through which he gained access appeared to have been forced. When discovered, he was leaning over a coin receptacle within ten inches of a jukebox. A screwdriver was thrust or jammed into the bottom of the coin receptacle. Bridgeford, admittedly the Defendant's companion, stood nearby holding a crowbar. A factfinder would have no difficulty in drawing the inference beyond a reasonable doubt from these facts that the Defendant entered the tavern intending to commit a theft.

**2.** At the same time, however, we have noted that evidence of a forced entry standing alone is not sufficient to support an inference of an intent to commit a theft, although it will permit an inference of an intent to commit *some* crime. *Commonwealth v. Freeman*, 225 Pa.Super. 396, 400, 313 A.2d 770, 772 (1973).

The Defendant places great reliance upon *Commonwealth v. Keller*, 249 Pa.Super. 384, 378 A.2d 347 (1977), and argues that the factual setting there is similar to that at bar. In *Keller*, the Defendant and two other young men were observed at 7:10 A.M. standing around one of several coin–operated vacuum cleaners at a car–wash. As a motorist approached, the three young men fled the scene. The motorist thereupon examined the vacuum cleaner and observed that the coin box was damaged and that the coin box from a second cleaner was missing.

At trial, the Defendant denied that he or his companions had taken the money and he testified that he had used the damaged cleaner with no difficulty and that a "little old lady" had used the cleaner from which the coin box was missing. The motorist, called as a witness, contradicted the Defendant's testimony. The trial judge, sitting without a jury, found the Defendant guilty of theft by unlawful taking.

Finding only the presence of the Defendant at the scene and his subsequent flight, we reverse the conviction and observed once again that mere presence at the scene of a crime is not a sufficient circumstance upon which to predicate a conviction, and that flight does not convert presence into proof of guilt. We concluded that the evidence was as consistent with the inference that the Defendant innocently happened upon the scene and fled out of fear as it was with the inference that the Defendant participated in the crime. See also *Commwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873 (1977) and *Commonwealth v. Larkins*, 235 Pa.Super. 19, 341 A.2d 204 (1975).

■ We have no difficulty in distinguishing the facts in *Keller* from those at bar. The conduct of Appellee and the attendant circumstances are hardly as consistent with innocence as with an unauthorized entry coupled with an intent to commit a theft. See *Commonwealth v. Addison*, 271 Pa.Super. 273, at 277–278, 413 A.2d 402 at 404. Such conduct constitutes burglary, and viewed in the light of *Meadows*, supra, as we must, we conclude that a factfinder on such evidence could find the Defendant guilty of burglary, be-

yond a reasonable doubt. Accordingly, the Order arresting judgment upon the conviction of burglary was unwarranted.

## 2.

### *Conspiracy*

Section 903 of the Crimes Code defines criminal conspiracy as follows:

"(a) . . . A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

The gravamen of the crime of conspiracy is an unlawful agreement, or an agreement to do a lawful act in an unlawful manner, and the agreement among co–conspirators is the nexus which makes each member criminally responsible for the acts of the others. *Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979); *Commonwealth v. Fontana*, 265 Pa.Super. 387, 401 A.2d 1361 (1979). Thus, proof beyond a reasonable doubt of a conspiratorial agreement is a necessary ingredient to support a conviction of criminal conspiracy. However, the Commonwealth is not required to establish the existence of a conspiracy by direct proof or an explicit or formal agreement, but may endeavor to prove the conspiracy by circumstantial evidence. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Kinsey*, 249 Pa.Super. 1, 8, 375 A.2d 727, 730 (1977), quoting *Commonwealth v. Eiland*, 450 Pa. 566, 570, 301 A.2d 651, 652 (1973).

Finally, while more than mere association must be shown, a conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and overt acts by the conspirators have been held

competent to prove that a corrupt confederation has in fact been formed. *Commonwealth v. Roux*, supra, 465 Pa. at 488, 350 A.2d at 870; *Commonwealth v. Kinsey*, supra, 249 Pa.Super. at 8, 375 A.2d at 730–31; *In the Interest of Gonzales*, 266 Pa.Super. 468, 405 A.2d 529 (1979). Regardless of the nature of the evidence, however, it is always necessary that the Commonwealth prove beyond a reasonable doubt that the Defendant shared a common understanding or agreement with his confederate. *Commonwealth v. Kinsey*, supra, 249 Pa.Super. at 9, 375 A.2d at 731.

At bar, the Commonwealth endeavored to establish the conspiracy circumstantially. Read in the light of *Meadows*, supra, and as we have observed, the testimony reveals that the Defendant was acquainted with his alleged co–conspirator, Bridgeford, prior to the events here involved, and had been drinking with him since 9:00 or 10:00 o'clock that morning; that both entered the tavern together; that the front door of the tavern appeared to have been forced or "pried away"; and that when apprehended, the Defendant was found leaning over the coin receptacle of the jukebox into which a screwdriver had been forced, as Bridgeford stood nearby with a crowbar in his hands.

It requires no convolution of the imagination to conclude that these facts and circumstances in combination reflect with clarity a conspiratorial agreement and common understanding between the Defendant and Bridgeford to burglarize the tavern. There is, in short, more than sufficient evidence from which a factfinder might conclude that the Defendant and Bridgeford were co–conspirators, engaged at the time of apprehension in carrying out the unlawful object of their conspiracy. As there is such evidence in the record, the lower court committed error when it arrested judgment upon the conviction of criminal conspiracy.

### 3.

#### Possessing Instruments of Crime

The lower court also arrested judgment of conviction for possessing instruments of crime. The instruments of crime allegedly possessed by the Defendant were the screwdriver

found by the arresting officer in the bottom of the coin receptacle, and the crowbar in Bridgeford's possession at the time of apprehension. The Defendant argues, again, that there was insufficient evidence upon which the factfinder could find him guilty of this offense by proof beyond a reasonable doubt.

 We need not reach these issues, however, in light of Section 906 of the Crimes Code, 18 Pa.C.S. § 906, which provides in pertinent part:

> "A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime."

Criminal conspiracy, 18 Pa.C.S. § 903, and possessing instruments of crime, 18 Pa.C.S. § 907, are both offenses defined by Chapter 9 of the Crime Code, the Chapter referred to in Section 906, and it is apparent in reviewing the facts before us that both crimes were committed with a single objective in view. Accordingly, the Defendant could not properly be convicted of both criminal conspiracy and possessing instruments of crime.[3] See *Commonwealth v. Jackson*, 261 Pa.Super. 355, 396 A.2d 436 (1978) (criminal attempt and possessing instruments of crime); *Commonwealth v. Crocker*, 256 Pa.Super. 63, 389 A.2d 601 (1978) (criminal attempt and possessing instruments of crime [4]).

The effect of our Order vacating the Order of the lower court arresting judgment is to reinstate the convictions. As

---

**3.** The rationale for this result is set forth in *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), quoted with approval in *Commonwealth v. Miller*, 469 Pa. 24, 26 n. 5, 364 A.2d 886, 887 n. 5 (1976).

**4.** Our Supreme Court has of course held that Section 906 does not preclude separate convictions for criminal conspiracy and the completed substantive offense which is the object of the conspiracy. *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976). And see *Commonwealth v. Crocker*, supra, 256 Pa.Super. at 67 n. 8, 389 A.2d at 603 n. 8. Our court has also held that one may be convicted of criminal conspiracy and criminal attempt when each offense is designed to culminate in a different crime. *Commonwealth v. Waters*, 255 Pa.Super. 107, 386 A.2d 159 (1978).

the Defendant was erroneously convicted of both criminal conspiracy and possessing instruments of crime, the record, in light of 18 Pa.C.S. § 906 reveals an error of law on its face and judgment on one crime or the other should be arrested. *Commonwealth v. Herstine*, 264 Pa.Super. 414, 399 A.2d 1118 (1979).

Accordingly, the Order arresting judgment is vacated; the case is remanded and the lower court shall arrest judgment upon the conviction of either criminal conspiracy or possessing instruments of crime and shall thereupon consider and dispose of the Defendant's motion for a new trial.