J-S46008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH JUDE CASINO, | |
| Appellant | No. 2830 EDA 2015 |

Appeal from the Judgment of Sentence September 10, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):
CP-46-CR-0004985-2013
CP-46-CR-0006154-1991
CP-46-CR-0013261-2001

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 12, 2016**

Appellant, Joseph Jude Casino, appeals from the judgment of sentence imposed after he was convicted of burglary, possessing an instrument of crime, and resisting arrest in a case docketed by the trial court at CP-46-CR-0004985-2013.  Based on Appellant's criminal charges in that case, he was also found in violation of the terms of parole/probation he was serving in two prior, unrelated cases docketed at CP-46-CR-0006154-1991 and CP-46-CR-0013261-2001.  The trial court consolidated Appellant's three cases and sentenced/resentenced him on September 10, 2014, to an aggregate term

_____

[*] Retired Senior Judge assigned to the Superior Court.

of 6 to 12 years' incarceration. Appellant now raises six issues on appeal. After careful review, we affirm.

The trial court concisely summarized the procedural history of Appellant's case in its Pa.R.A.P. 1925(a) opinion, and we need not reiterate it for purposes of our decision herein. ***See*** Trial Court Opinion (TCO), 11/5/15, at 8-17. Rather, we need only begin by setting forth the issues that Appellant raises on appeal:

> 1. The Commonwealth failed to produce sufficient evidence that [A]ppellant intended to commit the crimes of which he was convicted, and failed to produce sufficient evidence that the tools in his possession were instruments of crime.
>
> 2. The [trial court] erred by denying [A]ppellant's claim in his post-trial motion that the Commonwealth violated Pa.R.Crim.P. 573 by failing to produce photographic evidence until jury selection began.
>
> 3. The [trial court] erred by denying [A]ppellant's claim in his post-trial motion that the Commonwealth subjected him to incorrect identification procedures.
>
> 4. The [trial court] erred by imposing an unduly harsh, excessive and "faulty" sentence.
>
> 5. The [trial court] erred by denying [A]ppellant's motion for recusal prior to trial.
>
> 6. The [trial court] erred by finding that [A]ppellant received adequate notice of the terms of the sentences of probation imposed on him for the 1991 and 2001 cases.

Appellant's Brief at 4.

Initially, this Court has declared:

> "When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with

citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007), *appeal denied*, 596 Pa. 703, 940 A.2d 362 (2008) (citations omitted); ***Commonwealth v. Whitaker***, 30 A.3d 1195, 1197 n. 7 (Pa. Super. 2011); Pa.R.A.P. 2119(b). We "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Hardy***, 918 A.2d at 771.

***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012).

Here, Appellant does not present any discussion regarding how or why the trial court erred by issuing the rulings he challenges in issues two, three, five, and six. Instead, he simply sets forth the procedural history and/or facts underlying each claim, and then cursorily concludes that he is entitled to some form of relief. ***See*** Appellant's Brief at 8-10 (setting forth issues 2 and 3); 11-13 (setting forth issues 5 and 6). Even more problematically, Appellant does not cite or discuss any pertinent legal authority to support his suggestions of error by the trial court. Consequently, we deem Appellant's second, third, fifth, and sixth claims waived for our review. ***See In re R.D.***, 44 A.3d at 674.

We also conclude that Appellant has waived his fourth issue, a discretionary aspects of sentencing claim, because he did not include a Pa.R.A.P. 2119(f) statement in his brief, and the Commonwealth has objected to that omission. ***See*** Commonwealth's Brief at 25-26; ***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004) (holding that, where the appellee objects to a Rule 2119(f) omission, "this Court is

- 3 -

precluded from reviewing the merits of the claim and the appeal must be denied") (citations omitted).

Nevertheless, even had Appellant preserved his issues two through six for our review, we would deem them meritless based on the analysis set forth by the Honorable Wendy Demchick-Alloy of the Court of Common Pleas of Montgomery County in her Rule 1925(a) opinion. **See** TCO at 8-17. Additionally, Judge Demchick-Alloy's opinion thoroughly assesses the only claim that Appellant has adequately briefed, and thus preserved, on appeal, *i.e.*, his sufficiency-of-the-evidence claim (set forth in his first issue, above). **See id.** at 3-8. Consequently, we also adopt Judge Demchick-Alloy's decision as our own regarding that issue, as well, and affirm Appellant's judgment of sentence on the grounds set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2016

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | Nos. CP-46-CR-0004985-2013 |
| | : | CP-46-CR-0013261-2001 |
| v. | : | CP-46-CR-0006154-1991 |
| | : | |
| JOSEPH JUDE CASINO | : | |

## OPINION

DEMCHICK-ALLOY, J.                                                    NOVEMBER 5, 2015

This opinion addresses a direct appeal taken from judgments of sentence filed in the above-captioned matters on September 10, 2014. Appellant, Joseph Casino, the defendant, was found guilty of burglary, possessing an instrument of crime and resisting arrest in the matter indexed at no. CP-46-CR-0004985-2013. Based upon the charges filed in that case, he was also found to be in violation of the terms of parole in the matters indexed at nos. CP-46-CR-0013261-2001 and CP-46-CR-0006154-1991. He has filed a statement complaining of the following errors:

1.      The Commonwealth failed to produce sufficient evidence that appellant intended to commit the crimes of which he was convicted, and failed to produce sufficient evidence that the tools in his possession were instruments of crime.[1]

2.      The undersigned judge erred by denying appellant's claim in his post-trial motion that the Commonwealth violated Pa.R.Crim.P. 573 by failing to produce photographic evidence until jury selection began.[2]

3.      The undersigned judge erred by denying appellant's claim in his post-trial motion that the

---

[1] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶¶ 1, 2, 3 and 8.
[2] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 4.



Commonwealth subjected him to incorrect identification procedures.[3]

4.    The undersigned judge erred by imposing an unduly harsh, excessive and "faulty" sentence.[4]

5.    The undersigned judge erred by denying appellant's motion for recusal prior to trial.[5]

6.    The undersigned judge erred by finding that appellant received adequate notice of the terms of the sentences of probation imposed on him for the 1991 and 2001 cases.[6]

This opinion will state the procedural history leading to the instant appeal and integrate a recitation of the material facts into the discussion of the foregoing claims.

## I.    Procedural History

Appellant was convicted on charges related to burglaries in the matters indexed at nos. CP-46-CR-0006154-1991 and CP-46-CR-0013261-2001. He was serving sentences of parole for those crimes when he was again arrested while burglarizing a home in 2013. Following that arrest, he was charged with burglary, criminal trespass, theft by unlawful taking, receiving stolen property, possession of an instrument of crime and resisting arrest in the matter indexed at no. CP-46-CR-0004985-2013. As a result of the new charges, he was accused of violating the terms of his parole. Appellant was represented by Benjamin Cooper, A.P.D. as to the parole violations and the new charges.

Appellant was given a hearing as to the parole violations on May 27, 2014 and was found to have violated the terms of his sentences of parole. On August 18, 2014, the parties produced evidence and argument on two pretrial motions regarding the new charges: a suppression motion and a motion for the recusal of the undersigned judge. Both motions were denied. Appellant

---

[3] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 5.
[4] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶¶ 6, 9.
[5] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 7.
[6] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 9.

then waived his right to be tried by jury and stipulated to be tried on the evidence the parties had produced in the various hearings in the above-captioned matters and the facts stated in the affidavit of probable cause. The undersigned judge found defendant guilty of burglary, possession of an instrument of crime, and resisting arrest.

On September 10, 2014 the undersigned judge sentenced appellant in all three cases. Appellant then filed, *pro se*, three documents respectively styled as a "Motion to Modify Sentence," a "Post Sentence Motion," and a "Statement of Matters Complained of on Appeal." The undersigned judge filed an opinion stating that the pro se documents were legal nullities. The Superior Court reversed and remanded the case for consideration of the pro-se motions on their merits, and directed the undersigned judge to determine whether appellant wished to be represented by counsel during post-sentence proceedings.

On remand, appellant stated that he wished to be represented by court-appointed counsel other than Mr. Cooper, so the undersigned judge appointed Sean E. Cullen, Esquire. Mr. Cullen filed an amended post-sentence motion on behalf of appellant on July 31, 2015. After hearing evidence on the post-sentence motions on August 21, 2015, the undersigned judge denied them. The instant appeal followed.

## II. Discussion

**A. Whether the Commonwealth failed to produce sufficient evidence that appellant intended to commit the crimes of which he was convicted, and failed to produce sufficient evidence that the tools in his possession were instruments of crime.[7]**

The Commonwealth produced the testimony of Plymouth Township Police Officer Scott Severson at both the parole violation hearing and the hearing on the suppression motion.[8]

Officer Severson testified that he was on patrol on June 17, 2013 when he was dispatched to a

---

[7] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶¶ 1, 2, 3 and 8.
[8] N.T. 5-27-2014, pp. 9-19; N.T. 8-18-2014, pp. 12-20.

home at 8 Westwood Circle, Plymouth Township, Montgomery County. When he arrived, he saw the complainant, Samantha Parylak, then sixteen years old, in a window on the second floor of the home. Within moments, he heard a loud sound of a large object hitting wood, immediately followed by screaming from inside the house. Seconds later he saw appellant emerge head-first from a front window into the bushes below.

Patrolman Severson ordered appellant to stop but he ran, so the patrolman tackled him in the driveway of the home. Appellant struggled to move his arms to prevent Patrolman Severson from handcuffing him. Ms. Parylak was watching from the house, speaking to her father on the telephone, saying "They got him. That's the guy. He was coming into my room. He was trying to get in my room." It was a sunny day and there was nothing obstructing Ms. Parylak's view of Patrolman Severson handcuffing appellant.

Appellant was wearing rubber gloves and carrying a masonry trowel, a wood-handled tool with a thin, triangular metal blade four to five inches long. Appellant also wore a satchel in which he concealed some small tools. On the ground near him was a green pillow case from the house, filled with jewelry belonging to Ms. Parylak's mother and sister.

Appellant corroborated most of Patrolman Severson's testimony when he testified under oath at the hearing on his post-trial motions.[9] Appellant said that he went to a home in Plymouth Township, Montgomery County because he was owed money by persons who had lived there but who, unbeknownst to him, had moved. He knocked on the front door, but no one answered. He then found the front door to be unlocked, so he walked inside and entered several rooms. He attempted to enter the room in which Samantha Parylak was hiding. He said, "I walked into the living room and I yelled out, and then some girl screamed, 'get out, get out.' I called the cops,

---

[9] N.T. 8-21-2015, pp. 11-14, 52-57.

4

and I walked back out, and then I got tackled to the ground by the police." He stated that Ms. Parylak came outside and saw him sitting inside a police car.

According to appellant, he did not enter the home with the intent of stealing anything, but once inside he found jewelry and took it without permission. He admitted that a bag containing jewelry he had taken from the house without permission was on the ground next to him. Appellant testified that when tackled by Patrolman Severson, he was carrying tools including a putty knife, a triangular mason's trowel and pliers. He explained that he earned money using the tools as a handyman.

Except for appellant's claim that he did not intend to steal anything when he entered the home without permission, his testimony was virtually identical to that given by Patrolman Severson. He made the following admissions under oath during cross-examination at the hearing on the amended post-trial motion:

> Q. Okay, so the only single thing out of this entire record that you disagree with, all the evidence the Commonwealth presented, is whether you had the intent to take the jewelry when you went in the house, correct?
> A. Right, when I went there.
> Q. Okay, when you got inside of the house, you made the decision to take the jewelry, because you didn't find your money or the person that owed you that money?
> A. Right.
> Q. Okay. And that jewelry wasn't yours?
> A. No.[10]

Defendant admitted entering the Parylaks' home and taking jewelry without permission. He admitted possessing the masonry trowel and other tools. Appellant has admitted facts proving every element of every crime for which he was sentenced, with the exception of his

---

[10] N.T. 8-21-2015, pp. 56-57.

5

intent to commit a crime when he entered the Parylak's home, his intent to resist arrest, and his use of his tools as instruments of crime. One may infer proof of these elements from the Commonwealth's evidence.

The crime of burglary requires proof that the accused entered the building with the intent of committing a crime inside it. *Commonwealth v. Tingle*, 419 A.2d 6, 9 (Pa. Super. Ct. 1980). The Commonwealth may prove the requisite intent by means of circumstantial evidence. *Id.* The trier of fact "may conclude beyond a reasonable doubt that when one enters a building by force, he did so with the intent to commit a crime therein." *Id.* At appellant's stipulated bench trial, the undersigned judge explained how the Commonwealth's evidence proved all of the elements necessary to convict him of burglary,[11] an explanation that remains factually accurate and legally correct in spite of appellant's post-sentence claims.

At the parole violation hearing the Commonwealth produced the testimony of Plymouth Township Police Detective Andrew Moretti, who stated that he found no signs of forced entry on the doors of the home, but found that the screen of a front window had been slit.[12] Slitting the screen required force. The Commonwealth produced circumstantial evidence that appellant slit the screen to enter the home, which in turn constitutes circumstantial evidence of intent to commit a crime therein.

There was no evidence that the window appellant exited sustained the type of damage one would expect if it had been closed at that time. Therefore, one may infer that appellant exited through the screen that had been slit. It is unlikely that, of all the doors and windows in the house, appellant fortuitously exited the window with the slit screen. It is much more likely that he picked that particular window because: he wanted to escape quickly; he knew he would

---

[11] N.T. 8-18-2014 pp. 79-82.
[12] N.T. 5-27-2014, pp. 47-48.

6

not have to pause to open a door or window if he took that particular route; and he knew the screen in that particular window had been slit open because he slit it himself when he entered the house. Appellant was in possession of keys to a car parked on the street near the house,[13] so one may infer he exited the house by back-tracking the route he entered, in order to reach his car as quickly as possible.

Detective Moretti testified that the door to Samantha Parylak's bedroom had been broken in two, split in the middle.[14] One may infer that appellant broke the door from Patrolman Severson's testimony that he heard the sound of wood breaking, followed immediately by Ms. Parylak's screams. The fact that appellant intentionally gained entry to the bedroom in order to steal jewelry by using force supports an inference that he gained entry to the Parylak's home, only moments before, in the same way and for the same purpose: by force, to steal jewelry.

Appellant did not attempt to explain why he was wearing rubber gloves when he entered the Parylaks' home. One may infer that he wore gloves to avoid leaving fingerprints, and in turn, one may infer that he sought to avoid leaving fingerprints because he did not enter the house to lawfully regain possession of property that belonged to him, or even to take property to offset a debt owed to him: he broke into the house in order to steal jewelry from people who were strangers to him.

The circumstantial evidence of record is also sufficient to prove appellant intended to resist arrest. A person commits the crime of resisting arrest if he employs means justifying or requiring substantial force to overcome resistance, with the intent of preventing the public servant from effecting a lawful arrest. 18 Pa.C.S. § 5104. The evidence discussed above is sufficient to prove that Patrolman Severson lawfully arrested appellant and that appellant resisted

---

[13] *Id.* at 52.
[14] *Id.* at 43-44.

7

with the intent of preventing him from effecting the arrest.

Finally, the Commonwealth's circumstantial evidence is sufficient to prove he used his masonry trowel as an instrument of crime. "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An instrument of crime is defined as, "Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). For example, "a screwdriver is a common burglary tool for purposes of criminal possession of burglary tools." *Commonwealth v. Jackson*, 396 A.2d 436, 438 (Pa. Super. Ct. 1978). Appellant was holding the masonry trowel when he was tackled as he ran from the house. Under the circumstances, the most likely explanation for why he was holding the trowel at that moment was that he had used it only minutes before to slit the screen through which he entered. The evidence thus supports an inference that appellant used the trowel as an instrument of crime.

B. **Whether the undersigned judge erred by denying appellant's claim in his post-trial motion that the Commonwealth violated Pa.R.Crim.P. 573 by failing to produce photographic evidence until jury selection began.**[15]

Appellant claims the Commonwealth violated his right to discovery by failing to disclose pictures of the crime scene before trial. He seems to argue that the Commonwealth concealed circumstantial evidence that he used force to enter the Parylaks' home, and thus concealed circumstantial evidence proving he intended to commit a crime once inside the home. In order to prevail on this claim, appellant was required to prove the Commonwealth did not produce the photographs as required by law. Appellant's evidence in support of this claim consisted of nothing more than his own testimony and allocution about the events on the morning of his

---

[15] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 4.

8

trial.[16] The undersigned judge found those statements completely lacking in credibility based upon appellant's demeanor. His claim failed for that reason alone. Putting appellant's credibility aside, his claim is not corroborated by the transcript of the proceedings in question.[17] To the contrary, the record of the proceedings indicate that appellant's lawyer never stated that the Commonwealth failed to disclose the photographs in question in pretrial discovery, and appellant's lawyer used the photographs to appellant's advantage at his stipulated bench trial.[18]

**C.** **Whether the undersigned judge erred by denying appellant's claim in his post-trial motion that the Commonwealth subjected him to incorrect identification procedures.[19]**

As discussed in section "A" above, appellant testified under oath that he was inside the Parylaks' home. He testified that while he was inside, he heard Samantha Parylak scream, and he said that the police tackled him when he fled the house. His claim that the undersigned judge erred by denying his claim that he was subjected to unduly suggestive identification procedures would seem to have been rendered moot or meritless by his own testimony.

Alternatively, the undersigned judge addressed the merits of that claim on the record at the suppression hearing, and stands by the reasoning stated at that time.[20] Samantha Parylak saw appellant inside her home. She watched as he fled her home and was arrested in the driveway. She was on the telephone at the time, and the police overheard her say to the person on the other end of the line--her father--that she saw them arrest the man who had broken through her bedroom door. Appellant cannot complain that her identification of him was unduly suggestive under these circumstances. *See Commonwealth v. Moye*, 836 A.2d 973, 977 (Pa. Super. Ct.

---

[16] *See* N.T. 8-21-2015, pp. 26-34 (appellant testifying at hearing on post-trial motions); *see also* N.T. 9-10-2014, pp. 17-18 (appellant exercising right of allocution).
[17] N.T. 8-18-2014, pp. 53-54, 63-74.
[18] N.T. 8-18-2014, pp. 69-72.
[19] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 5.
[20] N.T. 8-18-2014, pp. 52-53.

2003) (citing and briefly discussing similar cases).

**D.** **Whether the undersigned judge erred by imposing an unduly harsh, excessive and "faulty" sentence.[21]**

A sentence may not be vacated on appeal merely because an appellate court might have reached a different conclusion, but only for an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Thus, a sentence may be reversed if it was "was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b)." *Id.* at 964.

When, as in this case, pre-sentence reports were made, the appellate court must "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). The notes of testimony show that the undersigned judge read the pre-sentence reports[22] and participated attentively when appellant exercised his right of allocution, even going so far as to read aloud his written notes for him.[23] The record shows that the undersigned judge paid careful consideration to the facts relevant to the standards established by subsection 9721(b) of the sentencing code,[24] including appellant's rehabilitative needs.[25]

Appellant's lengthy sentence is consistent with his rehabilitative needs, which seem as if they can only be met if he is confined, given that he has shown himself to be "virtually unstoppable on the street," an "unstoppable one-man crime-wave," despite his substantial health

---

[21] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶¶ 6, 9.
[22] N.T. 9-10-2014, p. 27.
[23] *Id.* at 17-24.
[24] *Id.* at 42.
[25] *Id.* at 27-32, 39-40, 48-52.

problems.[26] Appellant acted as if he was remorseful, but what may appear to be genuine remorse in a cold record was in fact transparently manipulative as it occurred in court.[27]

Appellant prefers the court to focus on his rehabilitative needs, to the exclusion of the impact on the victims and the protection of the public. Samantha Parylak and her family, and the public in general, have a fundamental interest safety and security in their own homes. Appellant's disregard of the legitimate security interests of others is manifest in his criminal history, an astounding sixteen burglary convictions in twenty-eight years despite having been sequestered in juvenile and adult detention facilities for twenty of those years.[28] The damage he caused Samantha Parylak was catastrophically life-changing and appears to be irreversible.[29] These facts provide robust support for the sentences imposed in the above-captioned matters.

E.      Whether the undersigned judge erred by denying appellant's motion for recusal prior to trial.[30]

Appellant claims the undersigned judge erred by refusing to recuse herself from appellant's bench trial as to his new charges after having presided over his hearing on his parole violations. Prior to trial, appellant's lawyer moved for recusal based on remarks the undersigned judge had made to enable appellant to make an informed decision as to whether to accept the Commonwealth's plea offer or go to trial.[31]

When confronted with a demand for recusal, a trial judge is presumed to have the ability to determine whether she can rule impartially and without prejudice. *Commonwealth v. Kearney*, 92 A.3d 51, 60 (Pa. Super. Ct. 2014). Appellant, as the party asserting that the undersigned judge must be disqualified, bears the burden of producing evidence establishing bias, prejudice,

---

[26] *Id.* at 38, 41.
[27] *Id.* at 34, 35, 37.
[28] *Id.* at 40-41.
[29] *Id.* at 42-44.
[30] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 7.
[31] N.T. 8-18-2014, pp. 3-6.

11

or unfairness necessitating recusal, and the decision by the undersigned judge may not be disturbed except for an abuse of discretion. *Id.*

After making a conscientious determination of her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome, the judge must consider whether her continued involvement in the case creates an appearance of impropriety or would tend to undermine public confidence in the judiciary. *Id.* "This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Id.* (quoting *Commonwealth v. Abu-Jamal,* 553 Pa. 485, 720 A.2d 79, 89 (1998)).

When moving for recusal, appellant's lawyer read from the record of the parole-violation hearing, in which the undersigned judge stated,

> if the Commonwealth's evidence is as strong as I heard in the *Gagnon*, you may get seriously hurt in here. On the other hand, if the government can't prove it, they can't prove it, and you will be found not guilty.[32]

The quotation does not reveal any bias, but to the contrary, expressly stated a willingness to require the Commonwealth to prove the new charges at trial. That quotation, and the other quotations appellant's lawyer relied on,[33] does not show a propensity to impose a harsh sentence in disregard of evidence yet to be produced at a sentencing hearing, but instead informed appellant that unless he produced mitigating evidence, he was at risk of serving a sentence up to the lawful maximum. The undersigned judge implored appellant to take full advantage of the lawyer who had been appointed to counsel him as to the value of the plea agreement offered by the Commonwealth: "I think you need to talk to your lawyer, because the D.A.'s willing to go in

---

[32] *Id.* at 4.
[33] *Id.*

12

the standard range."[34] The undersigned judge considered appellant's charges of bias and impropriety on the record and explained why the claim of bias was faulty and why the facts did not create an appearance of impropriety.[35] The undersigned judge again informed appellant, for his benefit, that he had a constitutional right to a trial; that he was presumed innocent until proven guilty beyond a reasonable doubt by means of evidence produced by the Commonwealth; she would continue to accept a negotiated guilty plea; and that if appellant were to make an "open" guilty plea,[36] she would consider that as evidence mitigating in favor of a reduced sentence.[37]

This case is factually indistinguishable from *Kearney. See id.* ("Appellant's first question challenges the trial judge's decision not to recuse herself from presiding over the bench trial for CR–211 and CR–223, after presiding over the jury trials, the attendant motion hearings, and the prior sentencing."). In that case, as in this one, the appellant argued that "the trial judge should have recused herself because, after presiding over the first two jury trials, and exposure to the pre-sentence investigation report which provided Appellant's criminal history, she was aware of evidence 'that an impartial finder of fact would not have known.'" *Id.* at 61. The Superior Court disagreed:

> As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (C.A.2 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions

---

[34] *Id.*

[35] *Id.* at 8-10.

[36] An "open plea agreement" is one in which the parties agree as to the charges to which the defendant will plead, but do not restrict the prosecution's right to seek the maximum sentences applicable. *Commonwealth v. White,* 787 A.2d 1088 (Pa. Super. Ct. 2001). Put another way, an open plea is one that contains no bargain for a specific or stated term of sentence. *Commonwealth v. Guth,* 735 A.2d 709, 710, n. 3 (Pa. Super. Ct. 1999).

[37] N.T. 8-18-2014, p. 9.

13

held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Id.* at 62 (quoting *Liteky v. U.S.*, 510 U.S. 540, 551 (1994)) (bold emphasis omitted). The precedent established in *Kearney* supports the conclusion that the undersigned judge did not err by refusing to recuse herself.

F.    **Whether the undersigned judge erred by finding that appellant received adequate notice of the terms of the sentences of probation imposed on him for the 1991 and 2001 cases.**[38]

The issue to be decided on appeal is whether a parolee may be found to have been given adequate notice of the terms of parole if the Commonwealth produces evidence that the county parole department habitually serves defendants with the terms of county probation and parole, and that the defendant had received notice of the standard terms of probation and parole when sentenced previously in a different case, but the Commonwealth fails to produce evidence that defendant was personally served with notice of those terms for the particular case at issue.

On December 30, 2005, defendant was sentenced by the Honorable Judge Paul W. Tressler (now retired) for the first time in the case indexed at no. CP-46-CR-0013261-2001. The sentencing order included a term of imprisonment for 11 1/2 to 23 months and a five-year term of probation that was to run concurrently with parole. The order also included restitution in the amount of $1,350.00. On the same date, in the case indexed at no. CP-46-CR-0006154-1991, defendant was re-sentenced to a term of probation of fifteen years, in the custody of the Montgomery County Adult Probation and Parole Department. The sentencing order in the 1991 case also required defendant to pay restitution, although it did not specify the amount. The term of probation in the 1991 case was ordered to run concurrently to the sentence imposed in the 2001 case. Judge Tressler expressly notified defendant on the record at the time of sentencing

---

[38] See Defendant's Concise Statement of Matters Complained of on Appeal, ¶ 9.

14

(in 2005) that he was to pay the restitution within the fifteen year term of probation, and that he was to go to the courthouse office of the county probation department immediately after the sentencing hearing so that he could present a copy of the sentencing order when he reported to the Montgomery County Correctional Facility (MCCF) to begin serving a sentence of incarceration on the 2001 case.

On May 27, 2008, in the case indexed at no. CP-46-CR-0000748-2007, defendant was sentenced for a new crime and given a term of incarceration of two to five years in a state correctional institution. Defendant was simultaneously sentenced in the 2001 case to a term of five years' probation consecutive to the 2007 case. Therefore, his probationary term in the 2001 case did not begin to run until 2013.

Defendant was arrested on new charges on June 17, 2013. As a result, Montgomery County Adult Probation Officer Joshua Mangle notified defendant that he was in violation of his parole on account of the new criminal arrest and defendant's failure to pay restitution on both the 1991 and the 2001 cases. At a hearing on the probation violation on May 27, 2014, the Commonwealth was unable to produce evidence that the county probation department advised defendant of the terms of his probation, i.e., the conditions upon which the county probation department could revoke his probation for doing or failing to do something, with respect to the sentence imposed in 2005 in the case indexed at no. CP-46-CR-0006154-1991. Adult Probation Officer Mangle testified that "in the regular course of business," defendants are normally advised of the terms when they arrive at the courthouse office of the county probation department immediately after being sentenced. Also, defendants who are sentenced to a term of incarceration in MCCF are advised of the terms of probation before they are released.

15

The law to be applied to this issue is not obvious. No statute in the Judicial Code (title 42, Pa. Cons. Stat. Ann.) or the statutes governing counties (title 16, Pa. Stat. Ann.) expressly establishes procedures or standards for the giving of notice of the terms of county probation or parole. Assuming that the decisional law that controls state probation also applies to county probation, then one may draw guidance from *Benefiel v. Commonwealth of Pennsylvania, Board of Probation and Parole*, 426 A.2d 242 (Pa. Commw. Ct. 1981). In *Benefiel*, a state parolee appealed from a decision of the Board recommitting him as a technical parole violator after he was arrested on a new charge of terroristic threats. *Id.* at 243. The facts supporting the new charge violated one of the general conditions of state parole, i.e., to refrain from "overt behavior that threatens or presents a clear and present danger to himself or others." *Id.* at 244 & n.10 (quoting 37 Pa.Code. § 63.4(10)). The parolee argued that "he was excused from complying with that parole condition because he did not endorse a parole contract indicating this was a condition of parole nor did he ever see the written condition...." *Id.* at 244. The Commonwealth Court rejected his argument: "the obligation was with Benefiel to acquaint himself with the conditions of his parole, either by reading them himself or having someone read it [sic] to him[,]" because 37 Pa.Code § 67.3 "puts the burden of acknowledging parole conditions upon the *parolee*." *Id.* (italics in original). The Commonwealth Court continued, "Having failed to fully comprehend and comply with the conditions of his parole, Benefiel cannot now excuse his non-compliance with parole conditions by attempting to shift the burden of acknowledgement to the board."

The fact that appellant's obligation to make restitution was a special, rather than general (i.e. code-mandated) condition of parole makes no difference. In *Sigafoos v. Pennsylvania*

16

*Board of Probation and Parole*, 503 A.2d 1076 (Pa. Commw. Ct. 1986), the Commonwealth Court stated,

> It is the obligation of every parolee to ensure that he is familiar with the terms and conditions of his parole. *Benefiel v. Commonwealth of Pennsylvania, Board of Probation and Parole*, 426 A.2d 242 (Pa. Commw. Ct. 1981). That same obligation is applicable to special conditions and instructions imposed by the Board or its agents.

*Sigafoos* at 1080.[39] The rationale behind the rules developed in *Sigafoos* and *Benefiel* is particularly applicable to this case because Judge Tressler expressly told appellant on the record to go to the courthouse office of the county probation department, and if he had done so, he would have been advised of the terms of his probation and parole. Therefore, the applicable decisional law supports the conclusion that appellant must be deemed to have received adequate notice of the conditions of his parole, and this claim of error fails.

---

[39] The rules in *Benefiel* and *Sigafoos* were not followed in *Pana v. Pennsylvania Board of Probation and Parole*, 703 A.2d 737, 739 (Pa. Commw. Ct. 1997) because *Pana* presented a slightly different issue. In *Pana*, the parolee appealed from a determination by the Pa.B.P.P. giving him no credit for time on the street after revoking his parole for a technical violation. The Commonwealth Court agreed with Pana's factual claim that the state parole regulations failed to give him notice that he would be given no credit for time on the street if he violated parole, citing the form Pana signed that advised him of the conditions governing his parole. The Commonwealth Court stated, "Obviously, a parolee cannot *fully* understand the possible penalties unless specifically notified of what they might be." *Id.* at 739 (citing 37 Pa.Code § 67.3). The Commonwealth Court then wrote, "It is not...clear that a parolee has the understanding that time determined to be delinquent is subject to forfeiture...." *Id.* The Commonwealth Court denied Pana's appeal because it found that he had constructive notice of that condition of parole because he had twice before determined to be a technical parole violator and delinquent, and was sentenced to serve backtime. *Id.* "Thus, Pana should have known that there was at least the possibility that his delinquent time was subject to forfeiture."

17

## CONCLUSION

Upon consideration of the foregoing discussion, the undersigned respectfully submits that the judgements of sentence in the above-captioned matters should be affirmed.

BY THE COURT,

Wendy Den.chick Alloy, Judge

copies of the above order sent on __11/5/15__
to the following:
Sean E. Cullen, Esquire; Cullen & Conwell; 40 E. Main Street; Norristown, PA 19401; by first-class mail
Robert M. Falin, Deputy District Attorney, Appellate Division, by inter-office mail

18