J-S10035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSE GONZALEZ | |
| Appellant | No. 2653 EDA 2015 |

Appeal from the Judgment of Sentence dated August 3, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000746-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.: **FILED MAY 16, 2017**

Appellant, Jose Gonzalez, appeals from the judgment of sentence imposed after the trial court convicted him of three counts of aggravated assault, two counts of conspiracy to commit aggravated assault, five counts of simple assault, two counts of conspiracy to commit simple assault, five counts of terroristic threats, five counts of recklessly endangering another person, one count of conspiracy to commit burglary and one count of trespass.[1] We affirm.

The record reveals that on December 30, 2014, Appellant and two co-conspirators forcibly entered the Philadelphia apartment of Denice Davilla.

_____

[1] 18 Pa. C.S. §§ 2702, 903, 2701, 903, 2706, 2705, 3502, 903 and 3503, respectively.

Ms. Davilla was pregnant, and there were six other people inside the apartment with her, including two children.

During the invasion, Appellant stood guarding the door while a co-conspirator, Michael, wielded a baseball bat, and another co-conspirator, "Boo", brandished a knife. Boo proceeded to threaten and menace the inhabitants of the apartment, grabbing, punching, attempting to stab, and spitting while he sought to locate a woman named Latisha. Eventually, one of the victims – Mr. Toler – persuaded the three intruders to leave the apartment by telling them he would help locate Latisha. Upon being contacted, the Philadelphia Police recovered Boo's knife outside of the apartment building. Appellant was charged with the above offenses.

Appellant was tried before the trial court on May 27, 2015. The Commonwealth introduced the testimony of Mr. Toler and another apartment inhabitant and victim, Lisette Negron. The Commonwealth also introduced the knife into evidence. Thereafter, the trial court rendered its verdicts and deferred sentencing. On August 3, 2015, the trial court imposed an aggregate sentence of 10 to 20 years' incarceration.[2] Appellant filed a post-sentence motion which the trial court denied. Appellant filed this timely appeal and presents two issues for our review:

_____

[2] Appellant's aggregate sentence consists of three concurrent 10 year mandatory minimums for the first-degree felonies of aggravated assault, conspiracy to commit aggravated assault, and burglary. The trial court imposed no further sentences on Appellant's remaining convictions.

- 2 -

1. Did the trial court err in entering verdicts of guilty against [Appellant] supported by insufficient evidence presented at trial?

2. Did the trial court err in entering verdicts of guilty against the weight of the evidence presented at trial?

Appellant's Brief at 9.

Appellant argues that the evidence was insufficient to support his convictions because he "did not participate as a principal or accomplice in the events at the apartment" and "was merely present during the incident." Appellant's Brief at 14. Appellant contests the weight of the evidence, stating that Ms. Negron, "the only witness that indicated the Appellant used an intimidating face or demeanor," was not credible. *Id.*

With regard to Appellant's first issue assailing the sufficiency of the evidence:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa.Super.2003). The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence. *See Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 661 (2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007).
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See id.* Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See id.* As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa.Super.2004), *appeal denied,* 584 Pa. 685, 881 A.2d 819

- 3 -

(2005). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 662 (citation omitted).

**Commonwealth v. Vogelsong**, 90 A.3d 717, 719 (Pa. Super. 2014).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard applied by the trial court in assessing the weight of the evidence. **Commonwealth v. Mucci**, 143 A.3d 399, 410–411 (Pa. Super. 2016) (citation omitted). Appellate review of a weight claim is a review of the trial court's exercise of discretion in assessing the weight of the evidence; the appellate court does not engage in its own independent assessment of whether the verdict is against the weight of the evidence. **Id.** at 411. In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.**

The trial court determined that Appellant was guilty under the theory of accomplice liability. In discussing accomplice liability, this Court has summarized:

> "[T]wo prongs must be satisfied for a person to be labeled an 'accomplice.' First, there must be evidence that the person intended to aid or promote the underlying offense. Second, there must be evidence that the person actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. Further, a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the person intended to aid in the commission of the underlying

crime, and then aided or attempted to aid." *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1015 (2007) (citations omitted). For purposes of accomplice liability, "[n]o agreement is required, only aid." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa.Super.2005). "With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime." *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228, 1234 (2004). "[T]he least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice." *Commonwealth v. Gladden*, 445 Pa.Super. 434, 665 A.2d 1201, 1209 (1995).

*Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. 2012), *aff'd*, 104 A.3d 511 (Pa. 2014).

Here, the evidence supports the trial court's determination that Appellant was liable as an accomplice. The trial court stated:

Ms. Negron and Mr. Toler credibly testified that Appellant and his two companions, Boo and Michael, forced their way into Ms. Davilla's apartment. Once inside the premises, Appellant's one fellow intruder, Boo, wielded his knife and search for a woman whom he said he would kill, and Appellant's other fellow intruder, Michael, followed Boo with a baseball bat in hand. Appellant meanwhile stood guard by the door and intimidated anyone from leaving the apartment. While rampaging through the apartment, Boo punched Mr. Negron and attempted to stab him with a knife, but was thwarted in his stabbing attempt by Mr. Negron's sister who pushed Boo's arm away. When the three intruders exited the apartment, Appellant took the deadly weapon (*i.e.*, the knife) from his companion and discarded it next to the building's exterior steps.

Trial Court Opinion, 4/19/16/ at 11.

Upon review, we discern no error by the trial court relative to Appellant's sufficiency and weight claims. The trial court explained that its convictions were supported by both the sufficiency and weight of the

evidence. Our review convinces us that the Honorable Susan I. Schulman, sitting as the trial court, has provided a detailed and comprehensive analysis, with appropriate reference to both the record and prevailing legal authority, in finding that Appellant's sufficiency and weight claims are without merit, and concluding that the "evidence proves that Appellant and his companions forcibly entered an apartment with a contemporaneous intent to commit crimes therein." Tr. Ct. Op. at 14. Accordingly, we adopt Judge Schulman's opinion as our own in affirming Appellant's judgment of sentence.

Judgment of sentence affirmed. The parties shall attach a copy of the trial court's April 19, 2016 opinion to any future filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2017

- 6 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0000746-2015

VS.    CP-51-CR-0000746-2015 Comm v Gonzalez Jose
Opinion    2653 EDA 2015

JOSE GONZALEZ



7435273161

OPINION

**FILED**

APR 1 9 2016

Criminal Appeals Unit
First Judicial District of PA

SCHULMAN, S.I., J.

Appellant appeals his convictions and sentence. This Court submits the following

Opinion pursuant to Pa. R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

## PROCEDURAL HISTORY

On May 27, 2015, this Court held a bench trial and found Appellant guilty of three counts

of aggravated assault (18 Pa. C.S.A. § 2702); two counts of conspiracy to commit aggravated

assault (18 Pa. C.S.A. § 903); five counts of simple assault (18 Pa. C.S.A. § 2701); two counts of

conspiracy to commit simple assault (18 Pa. C.S.A. § 903); five counts of terroristic threats with

intent to terrorize another (18 Pa. C.S.A. § 2706); five counts of recklessly endangering another

person (18 Pa. C.S.A. § 2705); one count of burglary (18 Pa. C.S.A. § 3502(a)(1)); one count of

conspiracy to commit burglary (18 Pa. C.S.A. § 903); and one count of criminal trespass (18 Pa.

C.S.A. § 3503(a)(1)(ii)).

On August 3, 2015, following a sentencing hearing, this Court sentenced Appellant to a

term of ten (10) to twenty (20) years' incarceration on one count of aggravated assault, a

concurrent term of ten (10) to twenty (20) years' incarceration on one count of conspiracy to

commit aggravated assault, and a concurrent term of ten (10) to twenty (20) years' incarceration

on one count of burglary. This Court imposed no sentence on any of the remaining verdicts.

1

Appellant filed a post-sentence motion on August 10, 2015, which this Court denied by order entered on August 14, 2015. Appellant subsequently filed a notice of appeal on August 26, 2015, and a Statement of Matters Complained of on Appeal on January 11, 2016.

## RELEVANT FACTS

The Commonwealth identified the following five (5) individuals as the victims in this case: Lisette Negron ("Ms. Negron"), Leslie Negron ("Mr. Negron"), Denice Davilla ("Ms. Davilla"), Steven Rosario, and Lawrence Toler ("Mr. Toler"). Ms. Negron and Mr. Negron are sister and brother, Ms. Davilla is Ms. Negron's niece, Steven Rosario is Ms. Negron's 13-year-old son, and Mr. Toler is the father of Ms. Davilla's child (or children). At trial, the Commonwealth presented only Ms. Negron and Mr. Toler as witnesses.

The trial testimony established that on December 30, 2014, Ms. Negron, her minor son Steven, her daughter Stephanie, her grandson Aiden, a two-year-old child named Dante, Mr. Toler, and Mr. Negron were inside the 17th floor apartment of Ms. Davilla located at 2443 North 11th Street in the city and county of Philadelphia, Pennsylvania. Ms. Negron had been living with Ms. Davilla for the previous four (4) months and Mr. Toler had been living in the apartment about one (1) year. (N.T., 5/27/15 pgs. 12-16, 52). Around 11:30 p.m., Ms. Negron heard a knock on the apartment's door and looked through the peephole. She saw an individual called "Boo" standing outside the apartment and went to inform Ms. Davilla of Boo's presence. Mr. Toler meanwhile "cracked" open the door about two (2) inches to see who was there, and Appellant, Boo, and another male named Michael "just bull-rushed in." Boo carried a knife and all three men forcibly pushed open the door as Mr. Toler resisted. (Id., pgs. 16-20, 49-50, 55).

"[F]oaming at the mouth" and wielding a knife, Boo "start[ed] to curse and yell" and demanded to know the location of a woman named "Latisha." Boo said he was "going to kill

2

that bitch." (Id., pgs. 16-20). While Boo threatened to kill Latisha, his one fellow intruder, Michael, picked up a baseball bat that was lying inside the apartment and his other fellow intruder, Appellant, stood by the door. Mr. Toler testified that because Appellant stood by the door bearing a "look like don't come near the door," he did not feel free to leave:

> I mean, you can tell when somebody got a threatening look. If I were to approach the door, either I get hit with a baseball bat or I get jumped.

Mr. Toler feared leaving the apartment "[b]ecause [he] didn't feel like getting hit with a bat ... [and] didn't want nothing to happen to [his] family members inside." (Id., pgs. 49-50). Ms. Negron similarly testified that Appellant "stood right in front of the door" giving "everybody a certain look, like you not passing me by." Appellant did not say anything or touch anybody, but he just "look[ed] at everybody like mean" and Ms. Negron did not "at all" believe he would permit anyone to freely leave the apartment. (Id., pgs. 19-20, 41).

Although Latisha fortunately was not present in the apartment, Boo continued "waiv[ing]" his knife and threatening "to kill" her and demanded the inhabitants to disclose her location. Ms. Davilla, who was pregnant, had by now exited her bedroom and encountered Boo in the apartment's hallway. With his knife in one hand, Boo "gripped" the neck portion of Ms. Davilla's shirt with his other hand and pressed her against the wall while bellowing "where the fuck is that bitch?" (Id., pgs. 22-23). After releasing Ms. Davilla, Boo proceeded into her bedroom where Mr. Negron and the two-year-old Dante were located. Ms. Negron followed Boo into the room and grabbed the toddler from her brother, upon which Boo wielded his knife over Mr. Negron's head and punched him several times in the face.[1] Boo then thrust his knife downward and attempted to stab Mr. Negron, but Ms. Negron pushed Boo's arm "upwards" and

---

[1] Mr. Negron was bleeding from the mouth as a result of being struck by Boo. (Id., pg. 53).

3

away from her brother. Turning to Ms. Negron, Boo raised his knife toward her and said "don't fucking touch me." (Id., pgs. 25-28).

Boo continued his rampage into the adjacent bedroom where Ms. Negron's 13-year-old son (Steven) and grandson (Aiden) were located. Boo stuck his knife just two inches from Steven's neck and said, "where the fuck is she? Where the fuck is she?" Ms. Negron again intervened and pulled Boo away from her son, prompting Boo to turn around and "stab" a closet door. (Id., pgs. 28-30).

Mr. Toler ultimately persuaded the three intruders to leave the apartment by telling them he knew Latisha's location and would take them to her. Mr. Toler testified he did not actually know the whereabouts of Latisha but "had to get [the intruders] out of there because [his] grandson was there and other kids were there." With Boo still brandishing his knife and Michael still carrying the baseball bat, Mr. Toler led the intruders out of the apartment and into an elevator.[2] Once outside the apartment building, Appellant took Boo's knife and threw it next to the building's exterior steps. (Id., pgs. 50-52).

The knife was introduced at trial as Commonwealth Exhibit "C5," and the parties stipulated that a Philadelphia Police Officer (Officer Whittaker) recovered the knife and placed it on a property receipt. (Id., pgs. 56-57).

Based on the above testimony and evidence, this Court found Appellant guilty of three counts of aggravated assault (18 Pa. C.S.A. § 2702); two counts of conspiracy to commit aggravated assault (18 Pa. C.S.A. § 903); five counts of simple assault (18 Pa. C.S.A. § 2701); two counts of conspiracy to commit simple assault (18 Pa. C.S.A. § 903); five counts of terroristic threats with intent to terrorize another (18 Pa. C.S.A. § 2706); five counts of recklessly

---

[2] While the men descended in the elevator, Boo "constantly" spit in Mr. Toler's face. (Id., pg. 51).

4

endangering another person (18 Pa. C.S.A. § 2705); one count of burglary (18 Pa. C.S.A. § 3502(a)(1)); one count of conspiracy to commit burglary (18 Pa. C.S.A. § 903); and one count of criminal trespass (18 Pa. C.S.A. § 3503(a)(1)(ii)). (Id., pgs. 63-64).[3]

## DISCUSSION

Appellant raises the following issues in his Statement of Matters Complained of on Appeal:

"1.	The evidence was insufficient as a matter of law to convict [Appellant] of all crimes charged as set forth in the bill of information because competent evidence of record did not establish beyond a reasonable doubt that defendant committed those crimes where:

a.	the witness, Lisette Negron, failed to testify that the [Appellant] acted in a manner to support a conviction on any of the charges or that the [Appellant] acted as part of a conspiracy in the incident;

b.	the witness, Lawrence Toller[sic], failed to testify that the [Appellant] acted in a manner to support a conviction on any of the charges or that the [Appellant] acted as part of a conspiracy in the incident;

c.	the witnesses[sic] testimony contradicted their own prior statements to police and in court testimony raising credibility concerns and undermines the reliability of said testimony;

d.	the witnesses[sic] testimony contradicted each other's in court testimony raising credibility concerns and undermines the reliability of said testimony;

2.	The verdict was against the weight of the evidence and is so contrary to the evidence that it shocks one's sense of justice due to the following:

a.	the witnesses[sic] testimony contradicted their own prior statements to police and in court testimony raising credibility concerns and undermines the reliability of said testimony;

b.	the witnesses[sic] testimony contradicted each other's in court testimony raising credibility concerns and undermines the reliability of said testimony;

3.	the Court erred in denying the [Appellant's] post-sentence motion pursuant to Pa. R. Crim. P. 720;

---

[3] This Court found Appellant not guilty of possessing an instrument of a crime and endangering the welfare of a child. (Id., pgs. 63-64).

5

4.    the sentence imposed by the Court was harsh and excessive under the circumstances."

This Court will address Appellant's claims in the above order.

**1-2.    Appellant's challenges to the sufficiency and weight of the evidence are waived.**

"[W]hen challenging the sufficiency [or weight] of the evidence on appeal, the Appellant's 1925 statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa. Super. 2009) (citing Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008)). "Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Id.  If an appellant files a 1925(b) statement that lacks such specificity, he waives his challenges to the sufficiency and weight of the evidence. Gibbs, 981 A.2d 274, 281; Williams, 959 A.2d 1252, 1257; Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super. 2013); Commonwealth v. Veon, 109 A.3d 754, 775 (Pa. Super. 2015); Commonwealth v. Freeman, 128 A.3d 1231, 1248-1249 (Pa. Super. 2015); Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002).  Even if a trial court "address[es] the topic of sufficiency in its opinion … this is of no moment to [the Superior Court's] analysis because [the Court] appl[ies] Pa. R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." Gibbs, 981 A.2d 274, 281.

Appellant generically alleges that the testimony of Ms. Negron and Mr. Toler was insufficient to sustain the verdicts.  Appellant does not specifically reference *any* of the 25

6

counts of the 9 crimes of which he was convicted – *i.e.*, the 3 counts of aggravated assault, 2 counts of conspiracy to commit aggravated assault, 5 counts of simple assault, 2 counts of conspiracy to commit simple assault, 5 counts of terroristic threats, 5 counts of recklessly endangering another person, 1 count of burglary, 1 count of conspiracy to commit burglary, and 1 count of criminal trespass. Nor does Appellant specifically reference *any element* of any of these crimes, let alone state why the evidence does not sustain a finding of a single element of a single crime. Because Appellant's superficial 1925(b) statement is galaxies away from the requisite specificity mandated by Pennsylvania law, his challenges to the sufficiency and weight of the evidence are waived. Gibbs, 981 A.2d 274, 281; Williams, 959 A.2d 1252, 1257; Garland, 63 A.3d 339, 344; Veon, 109 A.3d 754, 775; Freeman, 128 A.3d 1231, 1248-1249; Seibert, 799 A.2d 54, 62.

To the extent Appellant's perfunctory 1925(b) statement can be construed as specifically challenging his convictions on the charges for which Appellant actually was sentenced – *i.e.*, first-degree aggravated assault, conspiracy to commit first-degree aggravated assault, and first-degree burglary – his appeal is meritless.

a. **Sufficiency / Weight Standard**

"The standard ... when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Gibbs, 981 A.2d 274, 280-281 (citations omitted here). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Id. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the

combined circumstances." Id. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Id. "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Id. "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." Id.

In considering a challenge to the weight of the evidence, an appellant "*concedes* that the evidence was sufficient to sustain the verdict." Commonwealth v. Manley, 985 A.2d 256, 261 (Pa. Super. 2009) (emphasis in original). "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Gonzales, 109 A.3d 711, 723 (Pa. Super. 2015). "A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of the witnesses." Id. "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Id. The appellate court's "purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the ... verdict did not shock its conscience." Id. "Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." Id. "An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice." Id.

8

**b.     Accomplice Liability**

"It is well-established ... that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." Commonwealth v. Murphy, 577 Pa. 275, 285-286 (2004). "[T]he actor and his accomplice share equal responsibility for commission of a criminal act." Id. (citing Commonwealth v. Bradley, 481 Pa. 223 (1978)). "A person is deemed an accomplice of a principal if with the intent of promoting or facilitating the commission of the offense, he: (i) solicited the principal to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." Id.

"Accordingly, two prongs must be satisfied for a defendant to be found guilty as an 'accomplice.'" Murphy, 577 Pa. 275, 286. "First, there must be evidence that the defendant intended to aid or promote the underlying offense." Id. "Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal." Id. "[A] defendant's association with the perpetrators of a crime, his presence at the scene of the crime, or his knowledge that a crime is being committed are not sufficient to establish his complicity in that crime." Commonwealth v. Shank, 883 A.2d 658, 666 (Pa. Super. 2005). "There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so." Id. "Such aid need not be substantial, however, and will be sufficient to establish the requisite shared intent so long as it was offered to the principal to assist him in committing or attempting to commit the crime." Id. Moreover, "an explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Commonwealth v. Kimbrough, 872 A.2d 1244, 1253-

9

1254 (Pa. Super. 2005). "Whether an accomplice possesses the same intent ... as his co-conspirator may be inferred from words, conduct, the attendant circumstances ... and all reasonable inferences that follow from them." Id. "[T]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." Commonwealth v. Gladden, 665 A.2d 1201, 1208 (Pa. Super. 1995) (citations omitted here).

### (i)  Aggravated Assault

"A person may be convicted of aggravated assault graded as a first degree felony if he 'attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Commonwealth v. Matthew, 589 Pa. 487, 491 (2006) (quoting 18 Pa. C.S. § 2702(a)(1)). "'Serious bodily injury' means 'bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. (quoting 18 Pa. C.S. § 2301). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Id. (quoting 18 Pa. C.S. § 901(a)). "An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." Id.

"A person acts intentionally with respect to a material element of an offense when it is his conscious object to engage in conduct of that nature or to cause such a result." Matthew, 589 Pa. 487, 492 (quoting 18 Pa. C.S. § 302(b)(1)(i)). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." Id. "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." Id.

10

Pennsylvania courts utilize "a totality of circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury." Matthew, 589 Pa. 487, 492 (citing Commonwealth v. Alexander, 383 A.2d 887, 889-890 (Pa. 1978)). Factors "considered in determining whether the intent to inflict serious bodily injury was present" include "evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury." Id.

Ms. Negron and Mr. Toler credibly testified that Appellant and his two companions, Boo and Michael, forced their way into Ms. Davilla's apartment. Once inside the premises, Appellant's one fellow intruder, Boo, wielded his knife and searched for a woman whom he said he would kill, and Appellant's other fellow intruder, Michael, followed Boo with a baseball bat in hand. Appellant meanwhile stood guard by the door and intimidated anyone from leaving the apartment. While rampaging through the apartment, Boo punched Mr. Negron and attempted to stab him with a knife, but was thwarted in his stabbing attempt by Mr. Negron's sister who pushed Boo's arm away. When the three intruders exited the apartment, Appellant took the deadly weapon (i.e., the knife) from his companion and discarded it next to the building's exterior steps.

The above evidence firmly supports that Boo attempted to stab Mr. Negron and therefore had "attempt[ed] to cause serious bodily injury to another ... knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Quoting 18 Pa. C.S. § 2702(a)(1). The above evidence further supports that Appellant aided and intended to aid Boo in committing the aggravated assault by helping Boo break into the apartment, guarding the

11

apartment door to prevent the inhabitants from leaving, and then discarding the deadly weapon with which Boo attempted to stab Mr. Negron. This evidence – deemed credible by this Court -- soundly sustains Appellant's conviction of aggravated assault as an accomplice.

### (ii) Conspiracy to commit Aggravated Assault

"To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a 'co-conspirator') to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." Murphy, 577 Pa. 275, 292 (citing 18 Pa. C.S. § 903). "The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators." Id. (citations omitted here). "As with accomplice liability, mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime." Id. "There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator." Id. "Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available." Id. "Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Id. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." Id.

12

Ms. Negron's and Mr. Toler's credible testimony established that Appellant and his two companions went to Ms. Davilla's apartment and forced their way through the front door. Mr. Toler testified that all three men forced open the door as Mr. Toler resisted them. As soon as the men barged into the apartment, Appellant's fellow intruder, Boo, who was brandishing a knife, advised he was looking for a woman whom he sought to kill. While Boo searched the premises, he punched and attempted to stab Mr. Negron but was thwarted in his stabbing attempt by Mr. Negron's sister, Ms. Negron, who pushed Boo's knife-wielding arm away from her brother. After Boo attempted to stab Mr. Negron and stuck his knife within inches of a minor child's neck, Appellant and his companions left the apartment and Appellant discarded Boo's deadly weapon. This evidence overwhelmingly establishes that Appellant and his companions conspired at the very least to commit aggravated assault, to say nothing of murder.

### (iii) Burglary

18 Pa. C.S.A. § 3502 defines the crime of burglary and in relevant part provides:

**(a) Offense defined.** – A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present....

See 18 Pa. C.S.A. § 3502(a).

To sustain a conviction of burglary, "the Commonwealth must prove beyond a reasonable doubt the following three elements: (1) entry of a building or occupied structure by a defendant; (2) with the contemporaneous intent on the part of the defendant of committing a crime therein; (3) at a time when the premises are not opened to the public and the defendant was not then licensed or privileged to enter." Commonwealth v. Gonzalez, 443 A.2d 301, 304-305 (Pa. Super. 1982). "[A] defendant commits first degree burglary if the location illegally entered: (1)

13

is adapted for overnight accommodation but no individual is present; (2) is not adopted for overnight accommodation but an individual is present; or (3) is adapted for overnight accommodation and an individual is present." Commonwealth v. Waters, 988 A.2d 681, 683 (Pa. Super. 2009) (citations omitted here). "The Commonwealth may prove its case by circumstantial evidence, and the specific intent to commit a crime necessary to establish the second element of burglary may thus be found in the defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." Gonzalez, 443 A.2d 301, 304-305. "[A] factfinder may conclude beyond a reasonable doubt that when one enters a building by force, he did so with the intent to commit a crime therein." Commonwealth v. Tingle, 419 A.2d 6, 9 (Pa. Super. 1980) (citations omitted here).

As noted, Ms. Negron's and Mr. Toler's credible testimony established that Appellant and his two companions, Boo and Michael, forced their way into Ms. Davilla's apartment. Appellant's one fellow intruder, Boo, wielded his knife and advised he was searching for a woman whom he sought to kill, and Appellant's other fellow intruder, Michael, followed Boo with a baseball bat in hand. Appellant meanwhile stood guard by the door and intimidated anyone from leaving the apartment. While rampaging through the apartment, Boo punched Mr. Negron and attempted to stab him with a knife, but was thwarted in his stabbing attempt by Mr. Negron's sister who pushed Boo's arm away. When the three intruders exited the apartment, Appellant took the deadly weapon from his companion and discarded it next to the building's exterior steps.

This evidence proves that Appellant and his companions forcibly entered an apartment with a contemporaneous intent to commit crimes therein, and thus squarely sustains Appellant's conviction of first-degree burglary.

14

### 3. Appellant's post-sentence motion

Appellant's post-sentence motion contains the same vague and undeveloped statements asserted in Appellant's 1925(b) statement, and thus his claim of error is waived for the reasons stated above. To the extent Appellant's perfunctory motion can be construed as specifically challenging his convictions on the charges for which Appellant actually was sentenced – *i.e.*, aggravated assault, conspiracy to commit aggravated assault, and burglary – his motion also was meritless for the same reasons stated above.

### 4. Whether this Court's sentence "was harsh and excessive under the circumstances."

Appellant's convictions of aggravated assault and conspiracy to commit aggravated assault were first-degree felonies and "crime[s] of violence" under 42 Pa. C.S.A. § 9714(g). Appellant's conviction of burglary under 18 Pa. C.S.A. § 3502(a)(1) also was a first-degree felony and a "crime of violence" under Section 9714(g).[4] Appellant already had a prior first-degree felony conviction for aggravated assault (N.T., 8/3/15, pgs. 6-7), and thus his instant convictions of "crimes of violence" invoked the mandatory sentencing scheme of Section 9714(a) and (a.1), which provide:

> **(a) Mandatory sentence. –**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary....

---

[4] Section 9714(g) provides, in relevant part, as follows:

> **(g) Definition. –** As used in this section, the term 'crime of violence' means ... aggravated assault as defined in 18 Pa. C.S. § 2702(a)(1) or (2) (relating to aggravated assault) ... burglary as defined in 18 Pa. C.S. § 3502(a)(1) (relating to burglary) ... or ... criminal conspiracy ... to commit ... any of the offenses listed above...." See 42 Pa. C.S.A. § 9714(g).

15

...

> **(a.1) Mandatory maximum.** – An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence....

See 42 Pa. C.S.A. § 9714(a) and (a.1).

Pursuant to Section 9714, this Court was required to impose ten (10) year minimum sentences for Appellant's "second strike" convictions of "crime[s] of violence," along with maximum sentences of twice the mandatory minimum terms. This Court's sentences therefore were neither "harsh" nor "excessive under the circumstances."

Furthermore, to the extent this Court was permitted discretion in sentencing, its exercise thereof was lenient not harsh. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2015) (citations omitted here). "In this context, an abuse of discretion is not shown merely by an error in judgment." Id. "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Id. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." Commonwealth v. Perry, 612 Pa. 557, 565 (2011). "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." Commonwealth v. Andrews, 720 A.2d 764, 768 (Pa. Super. 1998).

16

"Where pre-sentence reports exist," appellate courts "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Devers, 519 Pa. 88, 101-102 (1988). "A pre-sentence report constitutes the record and speaks for itself." Id. at 102. "[S]entencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure." Id. "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." Id. "This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there [courts] will presume also that the weighing process took place in a meaningful fashion." Id.; see also Commonwealth v. Best, 120 A.3d 329, 348-349 (Pa. Super. 2015) (quoting Devers, supra).

Prior to imposing sentence, this Court closely examined Appellant's presentence report, which reveals a criminal history that is atrocious. Appellant began his protracted criminal career as a juvenile, with six (6) arrests, four (4) adjudications, and five (5) commitments, and his criminal behavior continued undiminished throughout adulthood. His juvenile and adult record include convictions for aggravated assault, firearms offenses, terroristic threats, and violations of probation/parole. (N.T., 8/3/15, pgs. 8-15). Given Appellant's penchant for crime and rank disregard for his fellow citizens, he is fortunate this Court imposed concurrent rather than consecutive sentences.[5]

---

[5] It should be noted that Appellant, at his sentencing hearing, *requested* a ten (10) to twenty (20) year sentence. (N.T., 8/3/15, pgs. 9-10).

17