J-S77021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DEVON R. STEVENSON :
:
Appellant : No. 1673 EDA 2017

Appeal from the Judgment of Sentence April 21, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005076-2014

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.: **FILED MAY 03, 2019**

Appellant, Devon R. Stevenson, appeals from the April 21, 2017

Judgment of Sentence entered in the Philadelphia County Court of Common

Pleas following his jury conviction of Receiving Stolen Property and Attempted

Burglary.[1] After careful review, we affirm.

In its Opinion, the trial court fully and accurately set forth the relevant

facts and procedural history of this case, and we need not restate them in

their entirety. *See* Trial Ct. Op., 3/14/18, at 3-6. Briefly, on April 14, 2014,

Philadelphia police arrested Appellant for stealing from Michael Jewsbury and

Melissa Dorwani a silver Pontiac Grand Am, two laptops, a backpack, and two

sets of keys containing the keys to the victims' home and cars. The

Commonwealth charged Appellant with the above crimes, as well as Burglary,

_____

[1] 18 Pa.C.S. §§ 3925; 3502(a)(1)(i); and 901(a), respectively.

_____

* Retired Senior Judge assigned to the Superior Court.

Attempted Criminal Trespass, Criminal Trespass, Theft by Unlawful Taking, and Unauthorized Use of a Motor/Other Vehicle.

On May 3, 2016, the trial court granted the Commonwealth's pre-trial Motion in *Limine* to permit evidence of Appellant's prior bad acts—namely, three 2011 Burglary convictions—pursuant to Pa.R.E. 404(b)(2).[2]

Appellant's jury trial commenced on February 13, 2017. Relevantly, at trial Appellant and the Commonwealth agreed to two stipulations. First, they stipulated that Appellant made four phone calls from prison, which the prison custodian of records recorded.[3] In one call, Appellant was recorded asking his ex-girlfriend to tell his cousin that she could "sell" two laptops he received from his sister and godmother. In another call Appellant told his ex-girlfriend to tell his cousin "that she c[ould] sell those laptops." Second, Appellant stipulated to the details and his conviction of three Burglaries in 2001.

On February 17, 2017, the jury convicted Appellant of Receiving Stolen Property and Attempted Burglary. On April 21, 2017, the court sentenced Appellant to a term of 10 to 20 years' incarceration for his Attempted Burglary

---

[2] In relevant part, Pa.R.E. 404(b) permits the admission of evidence of a crime, wrong, or other act, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" where the probative value of this evidence outweighs its potential for unfair prejudice. **See** Pa.R.E. 404(b)(2).

[3] The Commonwealth introduced audio recordings and transcripts of these calls as evidence at trial.

conviction[4] and a consecutive term of 1 to 2 years' incarceration for his Receiving Stolen Property conviction, followed by 5 years' probation.

On April 24, 2017, Appellant filed a Post-Sentence Motion in which he challenged the discretionary aspects of his sentence, the sufficiency and weight of the evidence, and the trial court's admission of the prior bad acts evidence. On May 5, 2017, the trial court denied Appellant's Motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal:

1. Did the court commit error by convicting Appellant of Receiving Stolen Property when the evidence at trial was insufficient to prove that Appellant acquired the property of another while knowing it was stolen?

2. Did the court commit error by convicting Appellant of Attempted Burglary when the evidence at trial was insufficient to prove that Appellant attempted to enter the building in question with the intent to commit a crime therein?

3. Did the court commit error when it granted the Commonwealth's Motion to admit evidence of prior bad acts under Pa.R.E. 404(b) when the evidence was far more prejudicial than it was probative?

4. Did the court commit error by seating a prospective juror when defense counsel made a challenge based on the prospective juror's inability to follow instructions?

Appellant's Brief at 3.

_____

[4] Appellant's Attempted Burglary conviction qualified as a "second strike," requiring the court to impose a mandatory minimum sentence of 10 to 20 years' incarceration. *See* 42 Pa.C.S. §§ 9714(a)(1); 9714(g).

**Sufficiency of the Evidence**

In his first two issues, Appellant challenges the sufficiency of the Commonwealth's evidence in support of his convictions.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.*** (citation omitted).

To sustain a conviction of Receiving Stolen Property, the Commonwealth's evidence must establish that the defendant "intentionally receives, retains, or disposes of movable property of another" with knowledge that it was stolen or the belief that it was probably stolen. 18 Pa.C.S. § 3925.

An individual commits the offense of Burglary if, "with the intent to commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight

- 4 -

accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a)(2). An individual attempts Burglary if he "does any act which constitutes a substantial step toward the commission" of the Burglary. 18 Pa.C.S. § 901(a).

With respect to his Receiving Stolen Property conviction, Appellant claims that the Commonwealth failed to prove that he received stolen property. Appellant's Brief at 11. In particular, he argues that the Commonwealth's failure to present any evidence as to how or when he came to possess Mr. Jewsbury's keys, whether Appellant ever operated Mr. Jewsbury's vehicle, and whether Appellant had knowledge that the keys were stolen fatally undermines his conviction. *Id.* He avers that, because the "entirety of the Commonwealth's cases consisting of the police finding the car keys on Appellant's person over a week after they were first reported missing," the Commonwealth provided insufficient evidence as a matter of law. *Id.*

With respect to his Attempted Burglary conviction, Appellant claims the Commonwealth's evidence—the totality of which he claims was Mr. Jewsbury's testimony that he saw Appellant in his back yard and that police located him in the vicinity without break-in tools or a weapon—was insufficient to prove that he attempted to enter the victims' residence with the intent to commit a crime therein. Appellant's Brief at 12-14.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned Opinion of the Honorable Glynnis D. Hill, we conclude Appellant's sufficiency of the evidence challenges merit no relief.

*See* Trial Ct. Op. at 9-13 (concluding that (A) the Commonwealth's evidence was sufficient to support Appellant's Receiving Stolen Property Conviction because: (1) Appellant possessed property that he had stolen from the victims; (2) Appellant knew that there was marijuana in the trunk of Mr. Jewsbury's car; (3) Appellant's ex-girlfriend, who had told him the keys Mr. Jewsbury's car "belonged to . . . someone else;" and (4) Appellant did not intend to restore Mr. Jewsbury's car to him and (B) the Commonwealth's evidence was sufficient to support Appellant's Attempted Burglary conviction because: (1) Appellant snuck onto the victims' premises through a "crack in the gate before it closed" late at night and ascended stairs to the victims' second floor deck; and (2) Appellant then fled after Mr. Jewsbury observed him on the deck; this demonstrated to the jury that Appellant intended to burglarize the premises.).  We, thus, affirm on the basis of the trial court's March 14, 2018 Opinion.

**Motion in *Limine***

In his third issue, Appellant challenges the trial court's decision to grant the Commonwealth's Motion in *Limine* to admit evidence of Appellant's prior bad acts pursuant to Pa.R.E. 404(b)(2).  Appellant's Brief at 15.  He complains that the evidence of Appellant's 2001 burglaries "was far more prejudicial than it was probative" because the incidents occurred more than 10 years before the instant crimes, and "show only a basic pattern of a house being burglarized and car keys (among other items) being taken."  ***Id.*** at 16.  He characterizes this evidence as merely "basic pattern" evidence that is "unremarkable" and

"remote in time," and asserts that the likelihood of prejudice outweighed its probative value because "the jury could not have helped but thought that since Appellant had burglarized homes and stolen cars in the past, he must have done so on this occasion." *Id.* at 16-17.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule further provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

When weighing the probative value of the evidence against its potential for unfair prejudice, the length of time between the defendant's crimes is just

one of the factors the court must consider. *See Commonwealth v. Diehl*, 140 A.3d 34, 41 (Pa. Super. 2016) (citation omitted) (explaining that the court should consider a number of factors including "the strength of the 'other crimes' evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and 'the degree to which the evidence probably will rouse the jury to overmastering hostility'" and affirming the trial court's decision to permit, pursuant to Rule 404(b), introduction of evidence of the defendant's 2005 DUI conviction at his 2014 trial for Third Degree Murder). *See also Commonwealth v. O'Brien*, 836 A.2d 966, 971 (Pa. Super. 2003) (prior crimes were not too remote in time to be relevant even though they occurred 11 to 14 years before the crimes for which the defendant was on trial, particularly because the defendant had been incarcerated during some of the intervening years); *Commonwealth v. Luktisch*, 680 A.2d 877, 878 (Pa. Super. 1996) (the fact that prior bad acts occurred 14 years before the crimes for which the defendant was on trial did not render them inadmissible).

Here, the trial court permitted the Commonwealth to introduce evidence that Appellant had pleaded guilty to three 2001 burglaries to demonstrate that he engaged in a common scheme, plan, or design when he committed those crimes and the instant crimes. In making its determination, the trial court acknowledged that a significant period of time—16 years—had elapsed since the court convicted Appellant of his prior crimes, but appropriately noted that

the passage of time is only one of the factors to consider and that the "time differential . . . is not dispositive in and of itself."[5] Trial Ct. Op. at 16.

The court further considered that, similar to the instant crimes, Appellant committed all of his prior crimes in South Philadelphia. He perpetrated each of the crimes in the middle of the night, while the victims were at home and asleep. In the four completed burglaries, three from 2001 and one from 2014, the victims awoke to find that Appellant had stolen personal belongings, their car keys, and their cars, which the owners had parked outside of their homes. In two of the 2001 burglaries and in the completed 2014 burglary, police found the stolen cars parked at another location shortly after the theft. In the third 2001 burglary, police found Appellant actually driving the stolen car. Last, in both 2001 and 2014, police found Appellant in possession of the keys to the stolen cars, and initially claimed that he had not stolen the cars, but had gotten the keys from someone else.

Following our review, we conclude that the trial court did not abuse its discretion in admitting the evidence of Appellant's prior crimes pursuant to Pa.R.E. 404(b). The trial court considered the facts and circumstances of Appellant's prior convictions with his current crimes and properly concluded

---

[5] Moreover, the record reflects that Appellant had been incarcerated during some of the time between the prior crimes and the present ones, thus, diminishing the importance of the time between the crimes. **See Commonwealth v. O'Brien**, 836 A.2d 966, 971 (Pa. Super. 2003).

that evidence of Appellant's prior convictions was admissible to demonstrate that Appellant had engaged in a common scheme, plan, or design.

Moreover, the record belies Appellant's claim that the admission of this evidence prejudiced him. Notwithstanding the admission of the Rule 404(b) evidence, the jury found Appellant not guilty of Burglary, the theft of Mr. Jewsbury's car, and the theft of Mr. Jewsbury's and Ms. Dorwani's personal property. The jury's verdicts on these charges demonstrate that the jury was not improperly influenced by the Rule 404(b) evidence; and, instead, shows that the jury considered all of the evidence presented at trial and rendered a verdict it considered appropriate in light of the evidence. Appellant is, therefore, not entitled to relief on this claim.

**Juror Challenge**

In his final issue, Appellant claims the trial court erred when it seated Juror Number 11 after he challenged that juror for cause.[6] Appellant's Brief

---

[6] This Court's review of the Notes of Testimony indicates that the trial court seated Prospective Juror Number 1 as Juror Number 11, and seated Prospective Juror Number 6 as Juror Number 1. As discussed *infra*, Appellant challenged the seating of Prospective Juror Number 1 as Juror Number 11 for cause. In his Amended Rule 1925(b) Statement, Appellant referred to Juror Number 11 as "Prospective Juror No. 1." *See* Amended Rule 1925(b) Statement, 2/9/18. However, in addressing this issue in its Rule 1925(a) Opinion, the trial court was apparently confused as to which juror Appellant alleged the court erred in seating, and mistakenly found that Appellant had not preserved this issue because he did not object to the court seating Prospective Juror Number 6 as Juror Number 1. It is clear to this Court that Appellant only intended to challenge the seating of Prospective Juror Number 1/Juror Number 11, and properly preserved this issue for appeal by objecting on the record at voir dire and raising it in his Rule 1925(b) Statement.

at 17. In particular, Appellant claims that Juror 11 demonstrated her "inability to understand and follow basic instructions regarding the juror questionnaire and the court's voir dire questioning" because she admitted during voir dire that she had misunderstood a question on the juror questionnaire, which resulted in her mistakenly answering that she knew someone who had witnessed a crime when, in fact, she did not. *Id.* at 17-18.

"The decision whether to disqualify a juror is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion." ***Commonwealth v. Stevens***, 739 A.2d 507, 521 (Pa. 1999). "A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice." ***Commonwealth v. Ingber***, 531 A.2d 1101, 1103 (Pa. 1987). "The trial court makes that determination based on the prospective juror's answers to questions and demeanor." ***Stevens***, ***supra*** at 521.

In reviewing the trial court's decision not to strike Juror 11, we are mindful of the following:

> The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it. In exercising his discretion as to the fitness of a juror to serve, he has the juror before him, and much latitude must be left to him; and the weight to be given to the answers of a juror when examined on his voir dire is not to be determined exclusively by his words as we read them in the printed record. They are first to be weighed by the trial judge who sees and hears the juror, and, in the exercise of a wide discretion, may conclude that he is not

competent to enter the jury box for the purpose of rendering an impartial verdict, notwithstanding his words to the contrary….

***Commonwealth v. Robinson***, 864 A.2d 460, 490 (Pa. 2004), (quoting ***Commonwealth v. Sushinskie***, 89 A. 564, 565 (Pa. 1913)).

After questioning Juror 11 during voir dire about her qualifications to serve, the trial court determined that, notwithstanding her error in completing the juror questionnaire, Juror 11 was capable of following the law and rendering a fair verdict. In particular, when Appellant's counsel moved to strike the juror, the court responded:

> I do hear what you're saying. I did ask her [about the questionnaire]. She said that she had inadvertently put checkmarks in the "yes" box. I explained to her what the law is. I spent about six or seven minutes with her. She's been a juror before. I am not going to strike her. She has an opportunity, when she is before me, to make any corrections, as I have explained in the instructions.

N.T., 2/14/17, at 55-56.

Following our review, we conclude that the trial court properly exercised its discretion in determining that this juror was fit to serve and in denying Appellant's challenge for cause. Appellant is not, therefore, entitled to relief on this claim,

Judgment of Sentence affirmed. The parties are directed to append a copy of the trial court's March 14, 2018 Opinion to any future filings.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/19

**FILED**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

2018 MAR 14 PM 4: 25 FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

OFFICE OF JUDICIAL RECORDS
**COMMONWEALTH OF PENNSYLVANIA** :       **TRIAL DIVISION**
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT                                         :
OF PENNSYLVANIA                                               :       **CP-51-CR-0005076-2014**
        **V.**                                               :
                                                             :
**DEVON R. STEVENSON, APPELLANT** :            **No. 1673 EDA 2017**
                                                             :

**OPINION**

On April 14, 2014, police arrested Devon R. Stevenson (Appellant) for committing the following crimes against Michael Jewsbury and Melissa Dorwani (Complainants): attempted burglary, burglary, attempted criminal trespass, criminal trespass, receiving stolen property, theft by unlawful taking, and unauthorized use of a motor/other vehicle. On February 2, 2017, a jury found the Appellant guilty of Attempted Burglary[1] (F1)[2] and Receiving Stolen Property (F3)[3]. On April 21, 2017, the court sentenced the Appellant to 10 to 20 years on the attempted burglary conviction and 1 to 2 years consecutively on the Receiving Stolen Property conviction. Hence, his total sentence was 11 to 22 years incarceration followed by 5 years probation. **The Appellant's attempted burglary conviction qualified as a second strike, requiring the Court to impose a mandatory minimum sentence of 10-20 years incarceration on that charge.**

On April 24, 2017, the Appellant filed a motion for reconsideration of his sentence.[4] On May 5, 2017, the court denied the Appellant's motion.

---

[1] At trial, the Appellant's attorney made a motion for judgment of acquittal on this charge. The Court denied the motion. Notes of Testimony, Feb. 16, 2017, pages 49-53.

[2] Overnight Accommodation, Person Present.

[3] The Appellant was convicted of a felony in the third degree because the value of the stolen property, a vehicle, was more than $2,000. 18 Pa.C.S.A. § 3903(a.1). NOTE: automobile is also mentioned explicitly in this section.

[4] The motion alleged that: (1) the court abused its discretion when it sentenced the Appellant because it failed to adequately consider his upbringing and social circumstances; (2) the court abused its discretion when it rushed the Appellant's sentencing, which took place during a scheduled fire alarm where it was unknown whether all parties could hear each other; (3) the verdict was against the wright of the evidence as a matter of law, and there was no evidence suggesting that the Appellant intended to enter the property at 619 Clymer Street; (4) there was insufficient evidence to show the Appellant was guilty of charges because the Commonwealth failed to show that Appellant

1

CP-51-CR-0005076-2014 Comm. v. Stevenson, Devon R.
Opinion



8082198651

On May 18, 2017, the Appellant filed a notice of appeal to the Superior Court. On June 9, 2017, the Court ordered the Appellant to file a Statement of Matters Complained of on Appeal. On July 17, 2017, the Appellant filed a motion for extension of time to file a Statement of Matters.[5] On September 8, 2017, the court granted this motion.[6] On November 3, 2017, the court signed an order allowing the Appellant to obtain trial transcripts.[7]

On November 21, 2017, the Appellant filed a Statement of Matters Complained of On Appeal.[8] On December 12, 2017, the Superior Court directed the Appellant to file an Amended notice of appeal with the Superior Court within 10 days. On February 9, 2018, the Appellant filed his Amended Statement of Matters.

The Appellant asserted the following issues in his Statement of Matters and Amended Statement of Matters:

1. The Court committed error when it convicted Appellant of Receiving Stolen Property because the evidence at trial was insufficient to establish that Appellant acquired the property of another while knowing that it was stolen.

2. The Court committed error when it convicted Appellant of Attempted Burglary because the evidence at trial was insufficient to establish that Appellant entered the building in question with the intent to commit a crime therein.

3. The Court committed error when it granted the Commonwealth's motion to allow evidence of the Appellant's prior bad acts to be made part of the record under Pa.R.E. 404(b) despite the fact that the evidence was far more prejudicial than it was probative.

4. The Court committed error when it seated a prospective Juror, Juror No. 1, after the defense counsel had already made a challenge for cause based on the Juror's inability to follow instructions.[9]

---

intended to burglarize the aforementioned property; and (5) the court erred when it granted the Commonwealth's Motion in Limine, which allowed the Appellant prior bad acts into the record, because the prior bad acts were unspecific, vague and more than ten years old.

[5] Upon receipt of all Notes of Testimony.

[6] The Court also ordered the Appellant to file a Statement of Matters within 21 days.

[7] The Court also ordered the court reporter to transcribe and produce the notes of testimony within 10 days.

[8] The State of Matters also included a request for the opportunity to file an Amended Statement once the remaining outstanding notes of testimony were fully transcribed.

[9] This was the only issue asserted in the Appellant's Amended Statement of Matters on February 9, 2018.

# FACTS

On the morning[10] of April 3, 2014, Michael Jewsbury and Melissa Dorwani (Complainants) woke up in their home at 619 Clymer Street in South Philadelphia to find Jewsbury's vehicle[11] and several other items[12] missing.[13] The last time Jewsbury had seen his vehicle was between 10:00 and 11:00pm on April 2, when it was parked in front of his house. [14] When discovering that their possessions were missing at 8:00am on April 3, the Complainants called the police[15]. The police later took the complainants' statements and dusted the house for fingerprints.[16]

On April 4, 2014, Officer Kevin Clark located[17] Jewsbury's vehicle parked near 1715 North 21st Street.[18] Clark in turn notified the police tow unit and filled out a property receipt for the vehicle.[19]

On April 5, 2014, the Police contacted Jewsbury to inform him that his vehicle had been recovered.[20] On April 9, Jewsbury went to the police impound lot to retrieve his vehicle.[21] When Jewsbury used his spare key to enter the vehicle, he found three items that did not belong to him: a CD in the CD player, a black bag and a rolled-up blue shirt.[22] Jewsbury also found Melissa

---

[10] It is unclear what time during the night that the initial incident occurred, but the Complainants called the police shortly after 8:00am on April 3, 2014. N.T., Feb. 15, 2017, page 24.

[11] Jewsbury owned a silver Pontiac Grand Am. Id. at 25-26.

[12] The other missing items were two laptops, a backpack, and two sets of keys which contained keys to the complainants' home and vehicles.

[13] Id. at 25-26.

[14] Id. at 25. .

[15] Id. at 25.

[16] Id. at 26-27.

[17] Officer Clark recognized the vehicle was stolen after "running the vehicle's license plate" and learning that its status was "stolen" and "guarded for prints." Id. at 90.

[18] Id. at 89.

[19] Id. at 91.

[20] Id. at 28.

[21] Id. at 29.

[22] The black bag and rolled-up blue shirt were found in the trunk of the vehicle. Id.

3

Dorwani's keys inside the vehicle.[23] These were the same keys stolen from the Complainants' home one week earlier.[24]

When unraveling the shirt, Jewsbury discovered that it contained a "gallon-size, zip-locked" plastic bag full of marijuana.[25] After Jewsbury notified the police about the marijuana, Officer Kevin Klein[26] placed the evidence on a property receipt.[27]

On April 12, Jewsbury used his spare key to drive his vehicle home and parked it in his driveway.[28] The Complainants' driveway was within a metal motion-sensored[29] gate.[30] Between April 12 and April 13, Jewsbury did not drive his vehicle.[31]

During the early morning of April 14, the Complainants heard noises outside their home.[32] These noises included a beeping sound from the Complainants' gate, a car horn,[33] and a "metal clunk" sound.[34] The Complainants thought that someone was moving the furniture on their second-floor deck.[35]

Using a flashlight, Jewsbury saw the Appellant standing on the second-floor deck with his back against the house.[36] Jewsbury believed that the Appellant was "trying to hide."[37] The Complainants described the Appellant as being "large[ly] built" and wearing a dark and light

---

[23] Id.
[24] Id. at 30.
[25] Id. at 30-31.
[26] Officer Klein did not make an arrest related to the marijuana because he "did not observe anyone that possessed the narcotics at the time." Id. at 99.
[27] Id.
[28] Id. at 32.
[29] The motion sensor on the Complainant's gate also had an alarm system incorporated therein. Id. at 33-34.
[30] Id. at 32-33.
[31] Id. at 33.
[32] Id. at 33-35.
[33] The sound of the car horn resembled that of Jewsbury's Pontiac Grand Am. Id. at 35.
[34] Id. at 34.
[35] Id. at 34-35.
[36] Id. at 35, 47; N.T., Feb. 16, 2017, page 89.
[37] N.T., Feb. 15, 2017, page 35.

4

striped hoodie.[38] Jewsbury subsequently turned on the porch light, yelled at the Appellant, and called 911 around 2:00am.[39] Jewsbury later returned to the window and heard the Appellant (who had climbed over a wall) "running around" in a nearby alleyway.[40] Jewsbury then saw the Appellant climb up a neighbor's scaffolding onto another roof before jumping to the street.[41]

When the police arrived, Jewsbury showed them where he had seen the Appellant on the second-floor deck.[42] Based on Jewsbury's description, the police put out flash information over their radio.[43]

At 2:15am, Detective Michael Corson and his partner received the call and saw the Appellant standing on the corner at 11th and Catherine streets (five blocks from the Complainant's home).[44] The Appellant was "very sweaty" and "looking around." [45] He also "shov[ed]...something down his pants."[46] Detective Corson believed that the Appellant matched the flash description.[47] After identifying themselves, Corson and his partner temporarily detained the Appellant before requesting officers to bring the Complainants to the location to determine whether the Appellant was the person outside their home.[48]

After the Complainants arrived at 11th and Catherine, **Jewsbury recognized the Appellant's striped hoodie and positively identified the Appellant.**[49] Detective Corson and his partner then arrested the Appellant and, in a search of him incident to the arrest, retrieved a black

---

[38] Id. at 48, 52, 78.
[39] Id. at 49-50.
[40] Id.
[41] Id.
[42] Id. at 52.
[43] Id. at 105-106.
[44] Id. at 105-108.
[45] Id. at 108.
[46] Id.
[47] Id.
[48] Id. at 109.
[49] Id. at 53, 115-116.

5

du rag, a polo shirt and a set of keys from his pocket.[50] **Jewsbury confirmed that the keys recovered from the Appellant were the keys to his Pontiac Grand Am (stolen a week earlier).**[51]

After the police documented the keys on a property receipt, they took the Complainants to the station to give a statement. Detective Corson later went to the Complainants' home to see if the Pontiac keys belonged to Jewsbury's vehicle.[52] They did.[53]

At trial, the Appellant testified that he had ascended to the Complainants' second-floor deck by using a staircase leading from the ground.[54]. The Appellant further testified that he had gotten Jewsbury's keys from his girlfriend (Shannon Tye) so that he could obtain a bag of marijuana from the vehicle.[55] He testified that she told him that the vehicle "belonged to...someone else."[56]

The Appellant also testified that he entered the Complainants' fenced-in driveway through "a crack inside the gate before it was closed" on April, 14, 2014, that he attempted to open the trunk of Jewsbury's vehicle by "hitt[ing] the alarm button" on the keys, and that he "hid" after "people came out looking out their windows."[57] Finally, he admitted that he hid against the structure of the home.[58]

---

[50] Id. at 110-113.
[51] Id. at 55-56, 114.
[52] Id. at 115.
[53] Id.
[54] N.T., Feb. 16, 2017, page 89.
[55] Id. at 68-70.
[56] Id. at 69-70.
[57] Id. at 72.
[58] Id.

6

## STIPULATIONS AT TRIAL

At trial, the prosecution and defense agreed to two[59] stipulations.[60] The first stipulation was that the Appellant made four phone calls from prison that were recorded by the custodian of records (Bradley Cackren) for the Philadelphia Prison System.[61] These calls were made on April 16, 19, 20 and 22.[62] Both audio recordings and transcripts of these calls were introduced as evidence by the Commonwealth during the trial.[63]

During the April 20, 2014 call, the Appellant admitted that he asked his ex-girlfriend to tell his cousin (Toya) that she could "sell" two laptops he received from his sister and godmother.[64] The Appellant further stipulated that he told his ex-girlfriend during the April 22 call to tell Toya "that she c[ould] sell those laptops."[65]

The second stipulation was that the Appellant committed several prior bad acts.[66] These prior bad acts were:

1. That the Appellant entered the home of John Bova, located at 128 Morris Street in South Philadelphia on the night of June 29, 2001, via a back rear window.[67] Upon entering the home, the Appellant stole cash and a set of keys to the victim's vehicle parked in front of 134 Morris Street.[68] The Appellant then stole the vehicle and the victim reported the burglary and stolen vehicle.[69]

---

[59] The parties also agreed to a third stipulation that the Appellant had a crimen falsi conviction in 2009. Id. at 65.
[60] Id. at 25.
[61] Id. at 26-29.
[62] Id. at 29.
[63] Id. at 28.
[64] Id. at 78-80.
[65] Id. at 80.
[66] Id. at 30-33.
[67] Id. at 30.
[68] Id.
[69] Id. at 30-31.

2. That the Appellant entered the home of Edward Brown, located at 137 Gladstone Street in South Philadelphia on the night of July 5, 2001, via a bathroom window.[70] Upon entering the home, the Appellant stole a watch, cell phone and a set of keys to the victim's vehicle (parked outside his home).[71] The Appellant then stole the vehicle and the victim reported the burglary and stolen vehicle.[72]

3. That the Appellant entered the home of Ellen Daily, located at 111 Gladstone Street in South Philadelphia on the night of July 6, 2001, via a rear screen window.[73] Upon entering the home, the Appellant stole various items, including cash and a set of keys to the victim's vehicle (parked outside her home).[74] The Appellant then stole the vehicle and the victim reported the burglary and stolen vehicle.[75]

4. On July 6, 2001, Officer Bonnie Lihotz found Brown's and Daily's stolen vehicles in the area of 6th and McClellan Street in South Philadelphia.[76] Officer James Mueller arrested the Appellant later that day while he was in possession of Bova's stolen vehicle.[77]

5. Later that day, the Appellant waived his Miranda warnings and gave a statement to Officer William Carey indicating that he did not take Bova's car, but that he received it from another person "two or three days before."[78] The Appellant further admitted that he knew the vehicle was stolen when he received it.[79] The Appellant also identified the picture of

---

[70] Id. at 31.
[71] Id.
[72] Id.
[73] Id.
[74] Id.
[75] Id.
[76] Id. at 32.
[77] Officer Mueller arrested the Appellant after Bova's vehicle came back in stolen status. Id.
[78] Id.
[79] Id.

8

the person from whom he had received the vehicle.[80] However, he denied any knowledge of the ongoing burglaries in the area.[81]

6. On July 9, the Appellant also waived his Miranda warnings and gave a statement to Officer Michael Razzano.[82] In this statement, he admitted to the burglaries of 128 Morris Street, 137 Gladstone Street and 111 Gladstone Street.[83] Specifically, he admitted to stealing Bova's vehicle after entering through a rear window in Bova's home and taking his car keys.[84] The Appellant further admitted that he removed a screen window in order to enter 137 Gladstone Street and steal Daily's vehicle.[85] The Appellant also admitted that he entered 111 Gladstone through a back door before taking Brown's car keys and car.[86] Finally, the Appellant admitted that he left the stolen vehicles at 6th and McClellan Street.[87]

## DISCUSSION

In his appeal, the Appellant argues that: (1) there was insufficient evidence to sustain his Receiving Stolen Property and Attempted Burglary convictions and (2) the Court erred when allowing the Commonwealth to make the Appellant's prior bad acts part of the record in the present case. These contentions are addressed below.

### I. There Was Sufficient Evidence To Sustain The Verdicts.

The Appellant first contends that there was insufficient evidence to convict him of Receiving Stolen Property and Attempted Burglary. This contention lacks merit.

---

[80] Id.
[81] Id.
[82] Id. at 33.
[83] Id.
[84] Id.
[85] Id.
[86] Id.
[87] Id.

9

It is well settled that evidence is sufficient to support a conviction where it establishes each material element of the charged crime and proves the Appellant's guilt beyond a reasonable doubt. See e.g. Com. v. Salter, 858 A.2d 610, 614 (Pa. Super. Ct. 2004); see also Com. v. Smith, 853 A.2d 1020, 1028 (Pa. Super. Ct. 2004); Com. v. Karkaria, 625 A.2d 1167 (Pa. 1993). "In reviewing a claim based upon the sufficiency of the evidence, the appellate court must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom." Com. v. Torres, 766 A.2d 342, 344 (Pa. 2001). When a verdict is contrary to the physical facts, human experience, and the laws of nature, then the evidence is insufficient as a matter of law. Com. v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (citing Com. v. Santana, 333 A.2d 876 (Pa. 1975)). We will now consider whether there was sufficient evidence to convict the Appellant of each crime.

## A. Receiving Stolen Property

There was sufficient evidence allowing the jury to convict the Appellant of Receiving Stolen Property. Under Pennsylvania law, a person is guilty of the crime of Receiving Stolen Property if "he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). Therefore, in order to convict on this charge, the Commonwealth must show beyond a reasonable doubt that: "(1) the goods are stolen; (2) the defendant received such goods; (3) the defendant knew them to be stolen or had reasonable cause to know that they were stolen," or possessed "guilty knowledge." Comm. v. Gore, 406 A.2d 1112, 1114 (Pa. Super. 1979). "Receiving" is further defined as "acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S. § 3925(b).

10

Circumstantial evidence may be used to show that a defendant possessed "guilty knowledge" that property at issue had been stolen, "and an inference of guilty knowledge may be drawn from unexplained possession of recently stolen goods." Commonwealth v. Dunlap, 505 A.2d 255, 257 (Pa. 1985).[88]

In the present case, the evidence was sufficient to establish Receiving Stolen Property. First, the Appellant possessed property (the car and car keys) he himself had stolen. Moreover, Jewsbury reported his missing vehicle to the Philadelphia Police on April 3, 2014, after realizing it was gone.[89]

Second, the Appellant received the stolen property. The keys to Jewsbury's vehicle were in the Appellant's pocket at the time of his arrest.[90] This was direct and circumstantial evidence that he had previously obtained possession of the vehicle. Further, the Appellant admitted at trial that he knew there was marijuana in the trunk of Jewsbury's vehicle.[91] His knowledge was circumstantial evidence that he placed the narcotics inside the vehicle. As mentioned, Jewsbury promptly notified Officer Klein once he discovered the drugs in his vehicle.[92]

Third, the Appellant knew or had reasonable cause to know the property was stolen. At trial, the Appellant testified that he received the keys to Jewsbury's vehicle from his ex-girlfriend who told him that the vehicle "belonged to...someone else."[93] This is evidence inferring that the Appellant knew Jewsbury's vehicle was stolen. More incriminatingly, the evidence suggests that the Appellant himself stole the vehicle.

---

[88] Citing Commonwealth v. Hogan, 468 A.2d 493 (Pa. 1983).
[89] N.T., Feb. 15, 2017, pages 26-27.
[90] Id. at 55, 111-114.
[91] N.T., Feb. 16, 2017, page 69.
[92] N.T., Feb. 15, 2017, pages 30-31, 97-99.
[93] N.T., Feb. 16, 2017, page 69-70.

Finally, there is no evidence that the Appellant received or retained the vehicle with the intent to restore it to Jewsbury. Thus, the jury properly found the Appellant guilty of Receiving Stolen Property.

## B. Attempted Burglary

There was sufficient evidence here allowing the jury to convict the Appellant of Attempted Burglary. Under Pennsylvania law, a person "commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Here the specific crime attempted is burglary. A person commits the crime of burglary:

> if, with the intent to commit a crime therein, [a] person enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein.

18 Pa.C.S. § 3502(a)(1)(i).

Therefore, to sustain a conviction of attempted burglary, the evidence must be sufficient for the jury to find beyond a reasonable doubt that "the defendant had both the intent to enter the building and intent to commit a crime in order to sustain its burden of proof of attempted burglary." Commonwealth v. Willetts, 419 A.2d 1280, 1281 (Pa. Super. Ct. 1980.[94] The specific intent required to establish attempted burglary may be proved by circumstantial evidence. Commonwealth v. Tingle, 419 A.2d 6 (Pa. Super Ct. 1980). Such evidence could include the appellant's words, conduct or attendant circumstances-together with all reasonable inferences therefrom. Id.

---

[94] Citing Commonwealth v. Morgan, 401 A.2d 1182, 1186 (Pa. Super. Ct. 1979); Commonwealth v. Madison, 397 A.2d 818 (Pa. Super. Ct. 1979).

12

In this case, the evidence established that the Appellant committed Attempted Burglary. First, the Appellant possessed the intent to enter the building. At trial, the Appellant admitted to entering the Complainants' premises through "a crack inside the gate before it was closed."[95] Moreover, despite the fact that Jewsbury's vehicle was parked in the driveway, the Appellant admitted that he climbed up stairs onto the Complainant's second-floor deck the night of his arrest.[96]

Second, the Appellant possessed the intent to commit an offense inside the premises and took a substantial step towards committing burglary therein. Viewing the totality of the circumstances, including the Appellant's admitted entry onto the premises via a crack in the Complainants' gate, the late hour he entered[97], and his flight[98], the jury properly inferred the Appellant took a "substantial step" towards committing burglary. Thus, the jury properly concluded that the Appellant intended to commit an offense inside the premises. Therefore, there was sufficient evidence for the jury to find that the Appellant attempted to burglarize the premises. Finally, one must keep in mind that the jury most likely also considered the Appellant's prior bad acts.

## II. The Court Properly Granted The Commonwealth's Motion To Allow Evidence Of The Appellant's Prior Bad Acts.

The Appellant next contends that the Court erred when it granted the Commonwealth's Motion in Limine and allowed it to disclose his 2001 prior bad acts to the jury. The Court disagrees.

The general rule under Pennsylvania law is that evidence of one crime will not be allowed as proof of commission of another. Pa. R. Evid. 404(b)(1); see also Commonwealth v. Morris, 425

---

[95] N.T., Feb. 16, 2017, page 72.
[96] Id. at 89-90.
[97] N.T., Feb. 15, 2017, page 24.
[98] Id. at 49; N.T., Feb. 16, 2017, page 90-91.

A.2d 715 (Pa. 1981). However, the Pennsylvania Supreme Court has held that special circumstances may exist justifying an exception to this general rule. Commonwealth v. Wable, 114 A.2d 334 (Pa. 1955). One circumstance is when evidence of other crimes tends to prove an element such as a common "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa. R. Evid. 404(b)(2). Under this exception, a court may admit prior bad acts but only after undergoing the following analysis:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact.

Commonwealth v. G.D.M., Sr., 926 A.2d 984, 987 (Pa. Super. Ct. 2007). See also Commonwealth v. Smith, 635 A.2d 1086 (Pa. Super. Ct. 1993).[99]

Although Pa. R. Evid. 404(b)(2) allows for the admissibility of certain prior bad acts, there are two limitations in criminal cases. First, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa. R. Evid. 404(b)(2). Second, "the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses

---

[99] Quoting Commonwealth v. Frank, 577 A.2d 609 (Pa. Super. Ct. 1990).

pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Id. 404(b)(3).

In this case, the Commonwealth sought to use three of the Appellant's prior bad acts in their case in chief. Specifically, the Appellant pleaded guilty to committing three burglaries in 2001.[100] As part of his guilty pleas, the Appellant admitted that he entered the three victims' South Philadelphia homes at nighttime and stole the keys to their car keys and vehicles.[101] After conducting a hearing, the Court allowed the Commonwealth to present evidence relating to the Appellant's prior bad acts.[102] In granting the motion, the Court found that the details the 2001 cases were sufficiently unique and similar to those in the current crime.[103] The evidence was also relevant because it established that the Appellant engaged in a common plan and scheme when committing burglary-type offenses.

In the present case, the Appellant was accused of taking the Complainants' vehicle and car keys, electronics, and personal items from the complainant's home.[104] These items were similar to those the Appellant stole in earlier burglaries. In the prior burglaries, the Appellant admitted that: (1) he entered occupied homes in South Philadelphia, (2) he entered the homes at night while the occupants were sleeping, (3) he took car keys, cars and other personal items, and (4) the cars were later recovered.[105]

In each of the prior cases, the Appellant exhibited "a distinctive method" of burglarizing.[106] However, there was also "a common plan or scheme [and] modus operandi" relating to this

---

[100] N.T., Feb. 16, 2017, pages 30-33.
[101] Id.
[102] N.T., May 3, 2016, page 8.
[103] Id. at 10-11.
[104] Id. at 11.
[105] Id.
[106] Id.

15

particular burgulary.[107] Moreover, the trial Court in this case noted that "[w]hile the time differential [here 16 years] is a factor that [a] Court should look at, it's not dispositive in and of itself" under Rule 404(b).[108] Under Rule 404(b), a court is required to consider a number of other factors (apart from the time factor) when determining whether other crimes or acts are admissible. The court did consider all of the other factors under 404(b) and decided that the Appellant was a copycat burglar. Moreover, the Court found that the probative value of the 404(b) evidence in this case outweighed its prejudicial impact.[109] Last, but not least, the Appellant stipulated to the evidence. Therefore, this claim should be dismissed.

### III. The Court Properly Seated Juror No. 1 After The Defense Made No Challenges For Cause And Therefore Waived The Issue.

Finally, the Appellant contends that the Court erred when it seated a prospective juror (Juror No. 1) after defense counsel made a challenge for cause based on the Juror's inability to follow instructions. However, the Appellant's contention is inaccurate. Just as importantly, this issue has been waived.

Under Pennsylvania law, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. Rule 302(a). In this case, the Appellant did not object when the Court excused prospective Juror No. 1, nor did he exercise a preemptive challenge.

To explain, the following sequence of events transpired during the jury selection. During voir dire, the parties examined prospective Juror No. 1.[110] However, prospective Juror No. 1

---

[107] Id.

[108] Id. at 11-12.

[109] Id. at 12. The Commonwealth gave the Appellant reasonable notice of the intent to use the prior convictions, as evidenced by the fact that the defense reviewed and approved the wording in the prior bad acts stipulation. N.T., Feb. 16, 2017, page 35.

[110] N.T., Feb. 13, 2017, pages 27-31.

indicated that he had "a business meeting in Boston" two days later.[111] Therefore, at the conclusion of the examination, the Court excused the juror from service because of his hardship, and defense counsel did not challenge the Court's strike.[112] Later, the parties examined prospective Juror No. 6, and at the conclusion of his examination, Juror No. 6 was accepted by all parties and seated/substituted as Juror No. 1.[113] The defense again did not challenge this juror.[114]

In conclusion, the Court properly seated prospective Juror No. 6 as Juror No. 1 because the Appellant did not oppose the Court's decision to strike (the original) Juror No. 1 (who had a hardship). More specifically, the Commonwealth, defense and Court all agreed that the hardshiped juror should be stricken. Therefore, this issue is moot. It is also waived because neither the Appellant nor his counsel even raised the issue during jury selection or the trial.

---

[111] Id. at 30.
[112] Id. at 31.
[113] Id. at 41.
[114] Id.

## CONCLUSION

The Appellant's contentions lack merit. First, there was sufficient evidence for the jury to convict the Appellant of Receiving Stolen Property. The Commonwealth established that the Complainants' property was stolen, that the Appellant received it, and that the Appellant knew or should have known that the property was stolen. Since these elements of Receiving Stolen Property were met, the Commonwealth adequately established the Appellant's guilt beyond a reasonable doubt.

Second, there was sufficient evidence for the jury to convict the Appellant of Attempted Burglary. The Commonwealth established that the Appellant possessed the intent to enter the Complainant's premises with the intent to commit a crime inside. Because these elements of Attempted Burglary were met, the Commonwealth adequately established the Appellant's guilt beyond a reasonable doubt.

Third, the Court properly granted the Commonwealth's motion to admit the Appellant's prior bad acts under Pa. R. Evid. 404(b). The Court admitted the prior acts because they were sufficiently similar to establish a common plan and scheme, modus operandi and manner of operation relating to the Appellant's current crime. Furthermore, although the crimes were over ten years old, the Court found that the Appellant's prior bad acts were more probative than they were prejudicial to the Appellant. For these reasons, the evidence was admissible.

Fourth, the Court Properly Seated Juror No. 1 after the defense made no challenges or objected. Under Pa.R.A.P. Rule 302(a), the Appellant waived the issue. First, prospective Juror No. 1 was excused from the jury after the Court struck him for his hardship (i.e. he had a business trip to Boston). Later, prospective Juror No. 6 was substituted as Juror No. 1 after all parties accepted the juror.

18

For these reasons, the Appellant's claims should be dismissed.


By the Court,


_____
Glynnis D. Hill, Judge

19

## PROOF OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following persons on the 14nd day of March, 2018.

Devon R. Stevenson
MX7222
SCI Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000

Kevin A. Holleran, Esquire
Attorney at Law
39 Cropwell Lane
Southampton, PA 18966

A.D.A. Larry Good, Esq.
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

_____3/14/2018_____
**DATE**

20